**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Denver WILLIAMS, James Robert Davis, Mike Blanton,**
**Defendants–Appellants.**

**Nos. 89–5460, 89–5473, 89–5503.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 28, 1989.
Decided Jan. 25, 1990.

---

Louis DeFalaise, U.S. Atty., David A. Marye, Asst. U.S. Atty. (argued), Lexington, Ky., for U.S.

Don Brad White, Lexington, Ky., for Denver Williams.

David O. Smith, Corbin, Ky., Carlos R. Morris (argued), Morris & Morris, Barbourville, Ky., for James Robert Davis.

James E. Hibbard (argued), London, Ky., for Mike Blanton.

Before MARTIN and NORRIS, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Defendants Williams, Davis, and Blanton appeal the sentences imposed after being convicted of conspiring to distribute and to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 and of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

## I.

On July 27, 1988, Detective Harry Winings of the Lexington Police Department, who was assigned to the United States Drug Enforcement task force, initiated an undercover narcotics investigation. Over the telephone, an informant introduced Winings as a person interested in purchasing one ounce of cocaine to defendant Davis. The phone number was registered in the name of defendant Blanton. After several phone calls, which were recorded, in which Winings spoke with either defendant Davis or defendant Blanton, a meeting was set up for the purchase of one ounce of cocaine. As directed, Winings went to the Wal–Mart parking lot in London, Kentucky, but when Davis and Blanton arrived (Blanton was driving), Winings refused to go with them to Manchester, Kentucky, to complete the deal. Davis agreed to try to get his source to allow the drugs to leave Manchester without payment in advance and then he and Blanton left. Winings waited, but Davis called later and told him that his source of supply would not let the cocaine come to London and the deal was off for that night. Another series of phone calls between Winings and Davis and Blanton in July failed to set up a meeting. Winings informed the defendants that he would be on vacation in August. When Winings returned in September, phone negotiations were resumed and a meeting was set up at the Cracker Barrel restaurant in Corbin, Kentucky, on September 12, 1988. Defendant Blanton arrived and told Winings that Davis would be 45 minutes late and to wait for him. Blanton told Winings that he was getting married, getting out of the drug business and changing his phone number, and then

left. Davis never showed up. Two hours later Winings called Blanton and asked what the problem was with the deal. Blanton said that the source of supply had failed to show up because he had to go to the hospital.

On September 19, 1988, Winings again called Blanton about the failed drug deal. Blanton said he did not understand why the deal couldn't be completed and that he would find Davis and have him call Winings. After Winings' calls to Blanton's answering machine remained unanswered, Winings assumed that the investigation had reached a dead end. He did not speak to Davis or Blanton again.

Ten days later, on September 29, 1988, Detective Winings received a call from defendant Williams, who told him he'd gotten Winings' phone number from Davis and Blanton. Williams stated that it was his fault the prior deal had fallen through because he had forgotten that his source of supply had to go to the hospital for kidney treatment on that night. After five phone calls, Winings and Williams set up a meeting at the Union 76 Truck Stop off of I–75 in Corbin, Kentucky, on September 29, 1988. At 11:25 p.m. Winings and DEA special agent Jim Malone pulled into the truck stop where Williams was waiting for them. Williams was seated in a green pickup truck driven by Richard Hoskins. Williams was arrested after he got out of the pickup truck, got into Winings car, and handed Winings a bag of cocaine. Hoskins was arrested in the pickup truck. Between his feet was a loaded 9 mm. semi-automatic Uzi pistol.

Davis, Blanton, Williams, and Hoskins were each indicted on the first two counts of a federal indictment. The first count charged them with conspiracy to distribute cocaine in violation of 21 U.S.C. § 846; the second count, with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Williams and Hoskins were also charged on a third count with using and carrying a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). After a jury trial, Davis, Blanton and

Williams were convicted on counts one and two. Williams was acquitted on count three. Because the jury was unable to reach a verdict on Hoskins, the court declared a mistrial. Davis was sentenced to 41 months on each count to run concurrently; Blanton to 27 months, and Williams to 30 months, on each count to run concurrently. Each defendant challenges his sentence pursuant to the Federal Sentencing Guidelines promulgated by the United States Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551 *et seq.* (West 1985 & Supp. 1989). These appeals present several issues including whether Davis' and Blanton's guideline sentencing range was properly enhanced two levels for possession of a firearm during the commission of an offense under Guideline § 2D1.1(b)(1).[1] Also at issue is whether Blanton's sentencing range should have been reduced two levels for acceptance of responsibility under Guideline § 3E1.1(a) and whether Davis' and Williams' sentencing range was properly enhanced two levels for being organizers under Guideline § 3B1.1(c). Finally, defendants Davis and Williams contend that the trial court erred in assessing the "base" level of cocaine as more than 100 grams, which created a base offense level of 18.

## II.

Defendants Davis and Blanton allege that it was improper to enhance their sentences under Guideline § 2D1.1(b)(1), which states: "if a firearm or other dangerous weapon was possessed during commission of the offense, increase by 2 levels." They argue that it was error to base their enhancement on a co-conspirator's possession of a gun when they were not present at the commission of the offense and no co-conspirator was convicted of using or carrying a weapon in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). Defendants Davis and Blanton contend that the jury's acquittal of Williams on count three charging him with using and carrying a firearm in relation to a drug

trafficking offense in violation of 18 U.S.C. § 924(c)(1) and the jury's failure to reach a verdict with regard to Hoskins establishes that there was serious dispute about whether a firearm had been possessed by any member of the conspiracy in relation to the drug offense. Moreover, although the government had requested at the sentencing hearing that the court apply the enhancement to the sentence of defendant Williams, the court refused to do so. The court gave no explanation about why it was applying Guideline § 2D1.1(b)(1) inconsistently, using it to enhance the sentence of defendants Davis and Blanton and refusing to use it against defendant Williams.

The government argues that a conviction under 18 U.S.C. § 924(c)(1) is not necessary for an enhancement under Guideline 2D1.1(b)(1), which involves a factual determination of possession of a firearm by the sentencing court. The government contends that under Guidelines §§ 2D1.1 and 2D1.4 Williams' and Hoskins' possession of the firearm can be imputed to convicted co-conspirators Davis and Blanton if it is reasonably foreseeable that a firearm will be used in a drug trafficking offense.

We agree that under the Guidelines, conviction of a firearm offense is not necessary for application of § 2D1.1(b)(1), and the act of possessing a firearm is attributable to a co-conspirator not present at the commission of the offense as long as it constitutes reasonably foreseeable conduct. *See United States v. Missick*, 875 F.2d 1294, 1301 (7th Cir.1989). For offenses involving drugs, the base offense level is increased by two points "if a firearm or other dangerous weapon was possessed during commission of the offense." Guideline § 2D1.1(b)(1). The enhancement for weapons possession also applies to offenses that reference § 2D1.1, i.e., § 2D1.4, which states: "If the defendant is convicted of conspiracy, the sentence should be imposed only on the basis of the defendant's conduct or the conduct of co-conspirators in

---

1. Although the government requested at the sentencing hearing that defendant Williams' sentence be enhanced two levels for possession of a firearm during the commission of an offense under Guideline § 2D1.1(b)(1), the court denied this request.

furtherance of the conspiracy that was known to defendant or was reasonably foreseeable." Commentary, Application Note One, § 2D1.4. Moreover, the commentary on the general application principles pertaining to relevant conduct states:

A particular guideline (in the base offense level or in a specific offense characteristic) may expressly direct that a particular factor be applied only if the defendant was convicted of a particular statute.... Unless such an express direction is included, conviction under the statute is not required.

Commentary, Application Note Five, § 1B1.3.

The government argues that even though Hoskins and Williams were found not guilty of the firearm offense,[2] the district court could conclude that a weapon was "possessed" by them in the commission of the offense. The government relies on *United States v. Juarez–Ortega*, 866 F.2d 747, 749 (5th Cir.1989), in which the Fifth Circuit held that a sentencing judge could properly consider facts surrounding the defendant's possession of a firearm despite his acquittal of the related firearm offense as long as the facts were not disputed as false or unreliable. The court did not elaborate on the requirements of reliability. In *Juarez–Ortega* the uncontradicted testimony was that during one of the drug sales, Juarez–Ortega had a firearm tucked into the waistband of his pants. In the present case, the weapon was on the floor of the truck at Hoskins' feet.[3]

We agree with the Fifth Circuit that there is a distinction between "possession," required by the Guidelines, and "using and carrying," required for the statutory violation. However, we find that the enhancement of defendants Davis' and Blanton's sentences for firearm possession was an abuse of discretion in the circumstances of this case. The district court did not state why it decided to apply the weapons possession enhancement to Davis and Blanton,

co-conspirators who were not present at the commission of the crime when the weapon allegedly was possessed. Under Guideline § 2D1.4, the enhancement of a sentence can be imposed *only on the basis of the defendant's conduct or the conduct of co-conspirators in furtherance of the conspiracy that was known to the defendant or was reasonably foreseeable.* Commentary, Application Note One, § 2D1.4 (emphasis added). Clearly, in the instant case the enhancement could not be applied on the basis of defendants Blanton's and Davis' conduct as they were not present when the weapon was allegedly possessed. Because Hoskins was not convicted of conspiracy, he was not a co-conspirator upon whose conduct the enhancement could be based. There was a hung jury in the trial of Hoskins and a mistrial was declared. The only other conduct which could provide the basis for the weapons possession enhancement was the conduct of co-conspirator Williams. However, the district court decided not to apply the weapons possession enhancement to defendant Williams and gave no reason for this decision.

Under the theory of co-conspirator liability established in *Pinkerton v. United States*, 328 U.S. 640, 646–47, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946), the overt act of one partner in crime is attributable to all members of the conspiracy. However, an overt act of one partner cannot be charged against other co-conspirators if it is not charged against the partner who allegedly committed the act, and the act of one partner cannot be charged against other co-conspirators in an inconsistent manner. This would be inequitable. In the present case, the district court at the sentencing hearing decided that defendant Williams, who was present at the drug sale and acquitted of using and carrying a firearm in violation of 18 U.S.C. § 924, was not to be given a two-level increase for weapons possession. If Williams' acquittal cast doubt about the appropriateness of using the weapons pos-

---

**2.** Williams was acquitted and for Hoskins, a mistrial was declared.

**3.** Hoskins testified that he owned the gun and that Williams did not know it was in the truck. Hoskins stated that he was unaware that Williams was involved in a drug sale.

session guideline against Williams, this doubt should have precluded its use, based on his conduct, against Blanton and Davis as well. Instead, defendants Blanton and Davis, who were not present at the drug sale or charged with violating 18 U.S.C. § 924, were given a two-level increase for weapons possession. This is contradictory to the rationale for imputing co-conspirator liability and violates the spirit of the Guidelines. One purpose of Congress in establishing the Federal Sentencing Guidelines was to narrow the wide disparity imposed by different federal courts for similar conduct by similar offenders. We find that the district court's inconsistent application of the weapons possession enhancement with regard to co-conspirators Williams, Blanton and Davis created the type of disparity which the Guidelines seek to avoid. It is particularly inequitable to impute the possession of a weapon to co-conspirators who did not commit the conduct relevant to the enhancement, when the act of weapons possession is not used against the co-conspirator who allegedly did commit the relevant conduct. For these reasons, we find that it was an abuse of discretion for the district court, without any explanation, to apply the weapons possession enhancement to the sentences of Davis and Blanton, when the court had decided not to apply the enhancement to the sentence of co-conspirator Williams. We, therefore, reverse the decision of the district court on this issue.

### III.

■ Defendant Blanton argues that the district court erred in refusing to reduce his sentence two levels for acceptance of responsibility.

We review the district court's determination of a defendant's acceptance of responsibility under a clearly erroneous standard. *United States v. Wilson*, 878 F.2d 921, 923 (6th Cir.1989). Guideline § 3E1.1(a) allows for a two-level reduction "if the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct."

Defendant Blanton argues that he should be given the two-level reduction because he voluntarily withdrew from the conspiracy before the commission of the offense. He contends that because he believed that he had withdrawn from the conspiracy and was indicted for the acts of allegedly total strangers, he stated at trial that he was not guilty of the offense charged and in no way denied responsibility for his acts.

The government argues that although Blanton told Detective Winings that he was getting out of the drug business, he did not accept responsibility because at trial he testified that he was not involved in the alleged drug activities, was not trying to sell drugs in any way, did not know what was happening at the Cracker Barrel restaurant when he and Davis met with Winings on September 12, 1988, that he was merely placing phone calls or relaying messages for Davis without knowing that drugs were involved, and that he never had been involved in the drug business.

We find that Blanton's testimony at trial demonstrates that he did not recognize or affirmatively accept responsibility for his criminal conduct. Blanton's argument that he pleaded not guilty because he believed that he had withdrawn from the conspiracy and was not guilty of the acts of total strangers is no justification for his denial of participation in attempts to sell cocaine prior to his alleged withdrawal. Defendant Blanton was given a two-level reduction for being a minor participant in the conspiracy under Guideline § 3B1.2 because both Davis and Williams told the probation officer that Blanton played only a minor role. However, the sentencing court determined that he had not accepted responsibility for his minor role. We find that this determination is not clearly erroneous and it is therefore affirmed.

### IV.

Defendants Davis and Williams contend that the district court erred in enhancing their sentences for their roles as organizers under Guideline 3B1.1(c), which states that the offense level is increased by two levels if "the defendant was an organizer, leader, manager or supervisor...." This determination is a factual one, which, upon appel-

late review, is subject to the clearly erroneous standard. *United States v. Wilson,* 878 F.2d at 923 (citing *United States v. Thomas,* 870 F.2d 174, 176 (5th Cir.1989)); *United States v. Mejia–Orosco,* 867 F.2d 216, 221 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989). Factors which the court should consider include:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others....

Commentary, Application Note Three, § 3B1.1.

### A.

■ The presentence report of Davis, entitled "Adjustment for Acceptance of Responsibility," states, "The defendant related he was responsible for setting up the cocaine transaction." We find that Davis' admission that he set up a cocaine transaction is sufficient to support the sentencing court's characterization of him as an organizer. Moreover, Davis spoke on numerous occasions with Winings, indicating that he could acquire cocaine for sale. He sent Blanton to tell Winings that he was running late and he used Blanton's phone to send and receive messages to set up cocaine transactions. The fact that he had to obtain the cocaine which he was going to sell from another source does not preclude his role as an organizer or supervisor. For these reasons, we find that the district court's determination that Davis was an organizer was not clearly erroneous and it will not be disturbed.

### B.

■ Defendant Williams contends that he was not an organizer because he merely delivered the cocaine on September 29, 1988, for a buy arranged by Blanton and Davis, and that he did not take an "active role" in the two-month conspiracy until the afternoon of the final day of the conspiracy.

The sentencing court determined that Williams was an organizer because he initiated the call to Winings, had the cocaine himself, and delivered it.

Williams' contention that he did not take an active role in the conspiracy until the final day is belied by his recorded conversation with Winings in which he states that it was his fault that the deal of September 12, 1988, at the Cracker Barrel restaurant fell through because he'd forgotten "my man" had to go to the hospital. He then admitted that he was in with Davis and Blanton on that deal. After negotiating a meeting through five phone calls which he initiated, Williams personally delivered almost four ounces of cocaine to Detective Winings. Based on this evidence, we find that the district court's determination that Williams was an organizer is not clearly erroneous and therefore affirm.

For the same reasons, we uphold the district court's refusal to characterize Williams as a minor participant under Guideline § 3B1.2. Williams argues that Blanton, who was given a reduction for being a minor participant, had a much more significant and extensive role in the conspiracy than Williams did. However, Blanton was given the reduction because both Davis and Williams told the probation officer that he had a minor role. The record indicates that Blanton delivered messages, drove Davis to various meetings, and allowed his phone to be used for setting up drug deals, which is consistent with a minor role. The distinction which the court made between Blanton and Williams is not clearly erroneous.

### V.

■ Defendants Davis and Blanton contend that the amount of cocaine involved in this transaction was under 100 grams and it was, therefore, error for the district court to assess a base offense level of 18 based on 100 grams.

The DEA chemist stated that there was 108.8 grams of cocaine which was approximately 87% cocaine hydrochloride. Defen-

dants' belief that 108.8 grams of 87% pure cocaine is less than 100 grams of cocaine for sentencing purposes is erroneous. The drug quantity table contained in Guideline § 2D1.1 states:

> The scale amounts for all controlled substances refer to the total weight of the controlled substance. Consistent with the provisions of the Anti–Drug Abuse Act, if any mixture of a compound contains any detectable amount of a controlled substance, the entire amount of the mixture or compound shall be considered in measuring the quantity. If a mixture or compound contains a detectable amount of more than one controlled substance, the most serious controlled substance shall determine the categorization of the entire quantity.

The district court thus correctly determined that more than 100 grams of cocaine was involved and correctly assessed the base offense level as 18 under Guideline § 2D1.1

## VI.

For the reasons stated above, the decision of the district court is affirmed in part and reversed in part. The case is remanded to the district court for a determination of the sentences of defendants Blanton and Davis consistent with the opinion of this court.