919 F.2d 739
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mike BLANTON, Defendant-Appellant.
 No. 90-5533.
 United States Court of Appeals, Sixth Circuit.
 Dec. 7, 1990.
 
 Before KRUPANSKY and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 BOGGS, Circuit Judge.
 
 
 1
 The appellant, Mike Blanton, was convicted of conspiracy to possess cocaine with the intent to distribute and possession of cocaine with the intent to distribute, in violation of 21 U.S.C. Secs. 841 and 846. Blanton appeals the sentence imposed by the district court. We affirm.
 
 
 2
 * This appeal arises out of a London, Kentucky cocaine transaction. An extensive account of this transaction appears in United States v. Williams, 894 F.2d 208 (6th Cir.1990). We therefore will only briefly summarize the events giving rise to this case. The transaction began in July 1988, when an informant introduced Blanton to Detective Harry Winings, of the Lexington Police force. Blanton and one of his co-conspirators, James Robert Davis, had a series of telephone conversations with Winings regarding the possibility of a drug transaction. As a result of these conversations, Winings scheduled a meeting with Davis and Blanton in a Wal-Mart parking lot. Because the supplier, who was based in Manchester, Kentucky, refused to send the drugs to London without advance payment, and Winings refused to travel to Manchester, the deal did not take place that evening. After another series of phone conversations, Winings set up a second meeting, this one outside the Cracker Barrel restaurant in Corbin, Kentucky. Blanton arrived, told Winings that Davis would be there, though late, and then left. Blanton also indicated to Winings that he planned to leave the drug business. Despite Blanton's assurance, however, Davis never appeared. After this failed rendezvous, Blanton informed Winings that Davis failed to show because his supplier needed kidney treatment, and, in a separate phone conversation, indicated the deal could still go through. However, after that point, he refused to return Winings's telephone calls.
 
 
 3
 Finally, Davis called Winings and arranged a third meeting. Neither Davis nor the appellant Blanton attended this meeting. Instead, two additional co-conspirators--Denver Williams and Richard Hoskins--met with Winings and consummated the transaction, after which they were quickly arrested. Hoskins had with him in the car a loaded Uzi 9mm handgun. This transaction led to the indictment and trial of the four individuals for various offenses.
 
 
 4
 Blanton, the only conspirator involved in this particular appeal, was indicted and convicted of conspiracy to possess cocaine with the intent to distribute and of possession of cocaine with the intent to distribute. After his conviction, the court determined that Blanton's offense level was 18. This included a two-point deduction for being a minor participant and a two-point enhancement for possession of a firearm during an offense, pursuant to U.S.S.G. Sec. 2D1.1(b)(1) (which Davis received as well). The court ascertained that Blanton's sentencing range was from 27 to 33 months and sentenced him to the lowest sentence within the range, 27 months. Denver Williams, one defendant who was actually present at the scene of the drug deal, did not receive a firearms enhancement. The trial judge believed that it would be inappropriate to enhance his sentence, since Williams had been found not guilty of the firearms charge. Blanton, Davis, and Williams all appealed their sentences. United States v. Williams, 894 F.2d 208 (6th Cir.1990). Blanton and Davis argued that it was an abuse of discretion to give them a two-point enhancement for possession of a firearm while not enhancing Williams's sentence. Since Williams was in the car at the scene and Blanton was not even present at the site of the drug deal, the differences in behavior should militate in favor of enhancing Williams's sentence, but not Blanton's or Davis's. Blanton and Davis prevailed on this argument and this court accordingly remanded for resentencing under the new range. Id. at 214. Davis should be happier after resentencing. Davis's new range was from 27-33 months, and he received the maximum sentence, 33 months. His sentence had been 41 months, so he benefited from the successful appeal. Blanton, however, was less fortunate. Upon resentencing, the trial judge deducted the two points and determined that Blanton's new range was from 21 to 27 months. He then sentenced Blanton to 27 months--exactly the same sentence that Blanton had received under the prior, higher, range. Blanton now appeals the second sentence, arguing that it is unfair for him to receive the same sentence after a successful appeal.
 
 II
 
 5
 The government argues that no sentence within the guidelines range is ever appealable. Analysis of the statutory scheme reveals a complex interplay of elements that defies easy generalization. The Sentencing Reform Act provides for judicial review of sentences in certain limited instances. 18 U.S.C. Sec. 3742(a) provides that a defendant may appeal if the sentence:
 
 
 6
 (1) was imposed in violation of law;
 
 
 7
 (2) was imposed as a result of an incorrect application of the sentencing guidelines; or
 
 
 8
 (3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, or includes a more limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range; or
 
 
 9
 (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.
 
 
 10
 Section 3742(b) provides for appeal by the government under certain circumstances. Essentially, the government's right to appeal is the mirror image of a defendant's right to appeal.
 
 
 11
 Regardless of which party appeals, Section 3742(e) indicates that the appellate court is to determine if the sentence:
 
 
 12
 (1) was imposed in violation of law;
 
 
 13
 (2) was imposed as a result of an incorrect application of the sentencing guidelines;
 
 
 14
 (3) is outside of the applicable guideline range, and is unreasonable, having regard for--
 
 
 15
 (A) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title; and
 
 
 16
 (B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c); or
 
 
 17
 (4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable.
 
 
 18
 Subsection (f) governs disposition of sentencing appeals and provides, in part, that if this court determines that the sentence is outside of the range and unreasonable, the court is to remand for resentencing. We infer from this statutory scheme that sentences within the sentencing range are per se reasonable.
 
 
 19
 The government argues that by limiting appeals to enumerated circumstances, the Sentencing Reform Act precludes review of any sentence for a reason not enumerated. This is a fairly straightforward application of the maxim of expressio unius est exclusio alterius. We agree with the government that the statutory grounds for appeal constitute the exclusive grounds for appeal. However, unlike the government, we do not conclude that any sentence within the applicable range is automatically unappealable. One statutory basis for appeal is that a sentence "was imposed in violation of law." This covers a great deal of ground. Under this rubric, we can clearly review a sentence within a guideline range that, for example, exceeds the statutory maximum sentence for the offense. Additionally, we can review sentences within the guidelines that allegedly violate the Constitution. See U.S. Const. Art. VI, cl. 2 ("This Constitution ... shall be the supreme Law of the Land....") Thus, if a district judge explicitly stated that he was sentencing the defendant to the highest sentence within the correct guideline because the defendant was black, or female, we would clearly be able to review the sentence.
 
 
 20
 Nonetheless, we agree, as a general matter, that sentences within the correct guideline range and not otherwise in violation of statutory or constitutional rules are not appealable. This is consistent both with the structure of the guideline system and our prior holdings. 18 U.S.C. Sec. 3553(b) provides that "[t]he court shall impose a sentence ... within the range [specified by the guidelines] unless the court finds that an aggravating or mitigating factor exists...." 28 U.S.C. Sec. 994 provides specific instructions to the Sentencing Commission regarding the method to be employed in setting up the Guidelines. In particular, Section 994(b)(2) limits the range so that "the maximum of the range established for such a term shall not exceed the minimum of that range by more than the greater of 25 percent or 6 months, except that, if the minimum term of the range is 30 years or more, the maximum may be life imprisonment." Pursuant to this statutory authorization, the Sentencing Commission has promulgated an extensive set of guidelines for application by district judges.
 
 
 21
 Taken as a whole, this elaborate statutory and regulatory scheme serves a dual purpose. First, Congress intended to limit and channel the discretion of sentencing judges. This resulted from the view that there were too many disparities in sentences. See S.Rep. No. 225, 98th Cong., 2d Sess. 38, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3221. Simultaneously, however, Congress realized that a rigid and inflexible system of mandatory sentences would run the risk of injustice through insufficient particularity. Though the purpose of the guidelines is to eliminate disparity, Congress did "not intend that the guidelines be imposed in a mechanistic fashion." Id. at 52, 1984 U.S.Code Cong. & Admin.News at 3235. Accordingly, the system retains some discretion for the trial judge. While the guidelines do channel discretion, they do not seek to abolish it. Indeed, Congress recognized that "[s]ome variation is not only inevitable but desirable." Id. at 150, 1984 U.S.Code Cong. & Admin.News at 3333. The point of having a range of sentences is to preserve some discretion for desirable variation. Allowing review of sentences within the guidelines would undermine this intricate scheme. Thus, we believe that sentences within the guidelines--whether at the top or bottom of the range--are not normally reviewable.
 
 
 22
 This analysis of the statutory scheme is consistent with the case law of this circuit. Like most other circuits, we have ruled that a failure to depart downward is not appealable. United States v. Draper, 883 F.2d 1100, 1105 (6th Cir.1989). While not dispositive, Draper is clearly relevant to the issue presented in the instant case. In Draper, the appellant complained that the court below failed to consider "atypical ameliorating characteristics" that warranted a downward departure. Ibid. Of necessity, a defendant who contends that he was sentenced incorrectly within the applicable range will make the same type of arguments. Thus, the reasons against allowing defendants to appeal decisions not to depart apply equally to appeal of decisions within the range.
 
 III
 
 23
 The conclusion that sentences within the range are normally not appealable (except as to statutory or constitutional violations) does not necessarily dispose of the appellant's case, however. The appellant concedes that sentences within the range are normally not reviewable but maintains that his sentence is reviewable under its unique facts.
 
 
 24
 The appellant's argument is not a model of clarity. However, construing his argument most charitably, we interpret it as an argument relying on the structure of the statutory scheme as a whole. Section 3742 specifically provides for appeal in certain circumstances. Appeals constitute an integral part of the statutory scheme. Appeals serve a number of functions, including alerting the Sentencing Commission to areas in need of adjustment. See United States v. Denardi, 892 F.2d 269, 280 (3d Cir.1989) (Becker, J., dissenting). The defendant argues that, by sentencing him to the same sentence that he had previously received, the trial court created a disincentive to meritorious appeals in derogation of the statutory scheme. Thus, according to the appellant, the trial court's action was "in violation of law" within the meaning of Section 3742 because it undermines the statutory goal of encouraging meritorious appeals.
 
 
 25
 Construed in this fashion, the court has jurisdiction to address the merits of the appellant's arguments. Nonetheless, upon consideration, we reject the argument that failure to reduce Blanton's sentence on remand violates the law by frustrating the purpose of the guidelines. If he behaves rationally, a defendant will appeal his sentence if the expected benefit is greater than the cost. In this case, Blanton was not made worse off by being sentenced to the same sentence that he had previously received. Obviously, by upholding the district court's decision to sentence Blanton to the same sentence after his "successful" appeal, we reduce the expected value of the appeal by some marginal increment. Nonetheless, the appeal will still have some expected value; a judge who has sentenced a defendant to the lowest sentence within the range may decide, upon resentencing, to give the defendant a sentence within the new range that is lower--in absolute terms--than the previous sentence. A defendant situated in Blanton's shoes will have some chance of getting a lower sentence and some chance of getting the same sentence if he succeeds on appeal. Therefore, the defendant who has received the lowest sentence within the range will still have some incentive to appeal, since the value of the right to appeal, ex ante, will be greater than zero.
 
 
 26
 The question before us is whether or not the value of the right to appeal has been so reduced that it undermines the statutory scheme. We do not think that it has been so undermined. Even if Blanton had known that the trial judge could sentence him to the same sentence after the appeal, he might have appealed as long as he believed that there was some chance of a lower sentence. Moreover, the statutory goal of using appeals to gauge the effectiveness of the Guidelines is not furthered by trivial or frivolous appeals. While allowing persons to receive the same sentences will have some disincentive effect, that effect is no different in kind from any other rule that may reduce some potential benefit to a successful appellant. Furthermore, this is consistent with the results reached by other circuits that have limited appeals in cases involving overlapping ranges. Some circuits have held that they need not resolve disputes regarding the correct range where the district court has indicated that it would impose the same sentence regardless of which of two overlapping ranges is adopted. United States v. Turner, 881 F.2d 684 (9th Cir.1989), cert. denied, 110 S.Ct. 199 (1990); United States v. Bermingham, 855 F.2d 925 (2d Cir.1988). Some disincentive therefore does not undermine the statutory scheme.
 
 IV
 
 27
 Blanton also advanced one constitutional argument. Essentially, he argues that the actions of the district court constituted vindictive sentencing as defined by the Supreme Court in North Carolina v. Pearce, 395 U.S. 711 (1969). In Pearce, the Supreme Court held that resentencing the defendant to a higher sentence after a successful appeal was presumptively vindictive and therefore a due process violation. Id. at 725-26. We do not believe that the Pearce presumption applies to cases such as ours. In Pearce, the defendant was made worse off after the successful appeal; here the defendant was neither helped nor harmed. We would imagine that defendants often receive the same sentence after a successful appeal results in a retrial and conviction. Moreover, the Supreme Court has resisted expanding the Pearce presumption to new situations. For example, in the recent case of Alabama v. Smith, --- U.S. ----, 109 S.Ct. 2201 (1990), the Supreme Court held that it was constitutionally acceptable to give a defendant who had successfully appealed a conviction resulting from a guilty plea a new, higher sentence after a trial also resulted in conviction. After a trial, the presumption of vindictiveness would not apply because the judge had more information upon which to base the sentence. Here, of course, the judge had no more information before the appeal than after it; the judge had the same amount of information. Accordingly, the judge imposed the same sentence.[1] Doing so is not vindictive.
 
 V
 
 28
 For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.
 
 
 
 [1]
 The appellant argues, in effect, that the severity of the sentence should be calculated by its place within the range of sentences under the guidelines. Thus, Blanton contends that his second 27-month sentence was harsher because it was at the top of the range while the prior sentence was at the bottom of the range. This we decline to do. Prisoners do not serve places within ranges; they serve time in prison. We gauge the severity of a sentence by the amount of time spent in prison, not by the location of the sentence within the applicable range