943 F.2d 53
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Silkey HARRIS (90-6344/6349), and Sheddrick Harris
(90-6345), Defendants-Appellants.
 Nos. 90-6344, 90-6345 and 90-6349.
 United States Court of Appeals, Sixth Circuit.
 Aug. 27, 1991.
 
 Before BOYCE F. MARTIN, Jr. and DAVID A. NELSON, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal from convictions and sentences imposed after the defendants were found guilty of a series of related offenses that included attempting to kill a federal informant and raping the informant's wife. The defendants' assignments of error are not persuasive, and we shall affirm the convictions and sentences in all respects.
 
 
 2
 * Police surveillance conducted in March of 1989 revealed possible drug-related activity at two apartments in a Memphis, Tennessee, apartment complex. On more than one occasion the surveillance team saw defendant Silkey Harris leave one of the apartments and proceed to the other. After an undercover officer twice purchased cocaine from Silkey outside one of the apartments, the police obtained warrants to search both residences. At one apartment the officers found approximately 1500 grams of cocaine, cocaine sifters, plastic bags with cocaine residue, a kilo press, two sets of scales, a semi-automatic weapon, and several pieces of paper bearing Silkey's name. At the other apartment the officers discovered a metal box containing cocaine and drug paraphernalia.
 
 
 3
 A warrant was issued for Silkey's arrest. Ray Madison, a former acquaintance and drug dealer, told the police where to find him, and Silkey was arrested shortly thereafter.
 
 
 4
 On May 4, 1989, Silkey Harris was indicted for possession of approximately 1525.9 grams of cocaine with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1).
 
 
 5
 On June 2, 1989, having been released on bond, Silkey met his brother, defendant Sheddrick Harris, and two other people--Christopher Roberson and Nicola Grayson--in a parking lot near Ray Madison's apartment. Silkey told them to rob the apartment and to "waste" its occupants.
 
 
 6
 Sheddrick, Roberson, and Grayson went to Mr. Madison's apartment shortly thereafter (about 1:00 a.m.). They pretended to be stranded and asked to use the phone. Mr. Madison brought the phone around to his patio and then went upstairs to check on his wife and children, who were asleep. When Madison returned, Roberson put a gun to his head and told him, "We are going to kill you for what you did to Silkey." Mr. Madison was then tied up and blindfolded with towels. Grayson went upstairs to Mrs. Madison's bedroom, pointed a gun at her, and tied her up with a telephone cord. After Roberson and Grayson had ransacked the bedroom, taking Mrs. Madison's purse and jewelry, Sheddrick entered the room and raped her.
 
 
 7
 The intruders then took Mr. Madison outside and placed him in the back seat of his own car. Roberson and Grayson got in the front seat and drove off; Sheddrick followed in a separate car. At one point, Roberson stopped to watch a house on fire. He commented to Mr. Madison that someone in the house was dying and that Madison would die next. Grayson added, "I hope you have got insurance."
 
 
 8
 After a while, Mr. Madison managed to free his hands and reached under the driver's seat for the gun he kept there. He shot Roberson and Grayson and fired shots at Sheddrick's car, causing it to crash into a ditch. He then ran to a nearby motel and called the police.
 
 
 9
 Silkey and Sheddrick Harris were named in a four-count indictment charging them with conspiring to commit murder in retaliation against a federal informant, in violation of 18 U.S.C. § 371; attempting to kill a federal informant, in violation of 18 U.S.C. §§ 1512 and 2; threatening to cause and causing bodily injury to a federal informant with the intent to retaliate, in violation of 18 U.S.C. §§ 1513 and 2; and causing bodily injury to the wife of a federal informant with the intent to retaliate, in violation of 18 U.S.C. §§ 1513 and 2.
 
 
 10
 The cases stemming from the two indictments--one against Silkey alone and one against Silkey and Sheddrick--were tried separately. Both juries returned verdicts of guilty on all counts.
 
 
 11
 With respect to the charge of possession, a probation officer set Silkey's total offense level at 28 and his criminal history category at III, indicating a sentencing range of 97-121 months. The district court accepted the probation officer's report and sentenced Silkey to 115 months on this conviction.
 
 
 12
 With respect to the offenses charged in the second indictment, the probation officer set the total offense level for both defendants at 22, Silkey's criminal history category at III, and Sheddrick's criminal history category at IV. The recommended sentencing ranges were 51-63 months for Silkey and 63-78 months for Sheddrick. Responding to a motion by the government for an upward departure, the district court increased Silkey's offense level by 10 points and Sheddrick's offense level by 12 points, making the new sentencing ranges 151-188 and 210-262 months, respectively. The court then sentenced Silkey to 188 months and Sheddrick to 240 months, with Silkey's two sentences to run consecutively. This appeal followed.
 
 II
 
 13
 Both defendants challenge the sufficiency of the evidence with respect to the alleged violations of 18 U.S.C. §§ 1512 and 1513. It is well settled that a conviction will only be reversed on this ground if, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Martin, 897 F.2d 1368, 1373 (6th Cir.1990), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 14
 Section 1512 provides, in pertinent part, as follows:
 
 
 15
 "(a)(1) Whoever kills or attempts to kill another person, with intent to--
 
 
 16
 (A) prevent the attendance or testimony of any person in an official proceeding; ... [or]
 
 
 17
 (C) prevent the communication by any person to a law enforcement officer ... of information relating to the commission or possible commission of a Federal offense ...
 
 
 18
 shall be punished as provided [hereinafter]."
 
 
 19
 The defendants maintain that the evidence presented at trial proved only that they intended to kill Mr. Madison in retaliation for his past actions, not to prevent him from rendering future assistance to the government. This argument is without merit; nothing in the record indicates that the defendants' intent was so limited. Given Mr. Madison's knowledge of Silkey's operations and whereabouts, not to mention the possibility that he might have been called to testify at Silkey's trial, a rational jury could well have concluded that the defendants' actions were forward-looking as well as retrospective.
 
 Section 1513 provides, in relevant part:
 
 20
 "(a) Whoever knowingly engages in any conduct and thereby causes bodily injury to another person ..., or threatens to do so, with intent to retaliate against any person for ...
 
 
 21
 (2) any information relating to the commission or possible commission of a Federal offense ...
 
 
 22
 or attempts to do so, shall be fined not more than $250,000 or imprisoned not more than ten years, or both."
 
 
 23
 With respect to this section, the defendants assert that the information actually provided by Mr. Madison--Silkey's whereabouts--did not constitute "information relating to the commission ... of a Federal offense." We disagree. The statute protects those who have provided "any" information relating to a federal crime, and we see no reason why this expansive language should exclude the location of a suspected felon for whom an arrest warrant has been issued. This reading of § 1513 is supported by the legislative history, which indicates that the statute was designed to provide broad protections for witnesses, victims, and informants. See S.Rep. No. 97-532, 97th Cong., 2d Sess. 9-15, reprinted in 1982 U.S.Code Cong. & Admin.News 2515, 2515-21; Criminal Law and Procedure Technical Amendments Act of 1986, Pub.L. No. 99-646, § 61, 100 Stat. 3592, 3614 (1986).
 
 III
 
 24
 The defendants also maintain that the district court erred in granting upward departures with respect to the crimes charged in the second indictment. In United States v. Joan, 883 F.2d 491 (6th Cir.1989), we adopted a three-part test to determine the appropriateness of an upward departure:
 
 
 25
 " 'First, we assay the circumstances relied on by the district court in determining that the case is sufficiently "unusual" to warrant departure. That review is essentially plenary.... Second, we determine whether the circumstances, if conceptually proper, actually exist in the particular case. That assessment involves factfinding and the trier's determinations may be set aside only for clear error.... [Third,] the direction and degree of departure must, on appeal, be measured by a standard of reasonableness.' " Id. at 494, quoting United States v. Diaz-Villafane, 874 F.2d 43, 49 (1st Cir.), cert. denied, 110 S.Ct. 177 (1989).
 
 
 26
 Applying this test to the case at bar, we find that the district court's departures were fully justified. First, the guidelines sections under which the defendants' predeparture offense levels were computed--U.S.S.G. §§ 2J1.2 (obstruction of justice) and 2X3.1 (accessory after the fact)--do not take into account extreme conduct such as unlawful restraint, rape, and kidnapping.[1] The Guidelines Manual expressly states that departures are permissible as a matter of law in the face of abduction or unusually heinous conduct. See U.S.S.G. §§ 5K2.4 and 5K2.8. Second, we agree with the district court that the facts in this case are particularly egregious--especially the abduction of Mr. Madison and the rape of his wife--and that they fully merit an upward departure. Third, we find that the particular departures at issue were not unreasonable. Given the "trial judge's intimate familiarity with the nuances of [the] case," Diaz-Villafane, 874 F.2d at 52, and the peculiarly heinous conduct that occurred here, we shall not disturb the defendants' sentences on this ground.
 
 IV
 
 27
 The remaining arguments advanced by the defendants need not detain us long.
 
 
 28
 With respect to his conviction for drug trafficking, Silkey asserts (1) that the district court erred in admitting evidence of other acts pursuant to Rule 404(b), Fed.R.Evid., and (2) that the conviction is not supported by sufficient evidence. Neither of these contentions is persuasive. Evidentiary decisions rest within the sound discretion of the trial court, United States v. Hickey, 917 F.2d 901, 904 (6th Cir.1990), and we find no abuse of discretion here with respect to the 404 evidence. With respect to the claim of insufficient evidence, the testimony presented at trial revealed, among other things, that Silkey was seen moving between the two apartments under surveillance, that he sold cocaine on two occasions to undercover officers, that the apartments contained drug paraphernalia and a large amount of cocaine, and that Silkey's fingerprints were found on a bag containing part of the cocaine. Considering this evidence in the light most favorable to the prosecution, a rational trier of fact could easily conclude that Silkey was guilty of possession with the intent to distribute.
 
 
 29
 With respect to the offenses charged in the second indictment, Silkey contends that the district court erred (1) in denying his motion for severance, (2) in failing to give an instruction limiting the use of his prior convictions, and (3) in imposing consecutive sentences. These arguments are also unpersuasive. It is well settled that a motion for severance will not be granted absent a showing of "specific and compelling prejudice." United States v. Causey, 834 F.2d 1277, 1287 (6th Cir.1987), cert. denied, 486 U.S. 1034 (1988). No such showing has made here. With regard to the limiting instruction, the trial transcript reveals that the district court did in fact instruct the jury that a prior conviction "is merely a circumstance which you may consider in determining the credibility of the witness. It is your province to determine the weight to be given to any prior conviction as impeachment." The imposition of consecutive sentences, finally, unless mandated or prohibited by statute, rests within the discretion of the district court. United States v. Gibson, 896 F.2d 206, 210 (6th Cir.1990). The court explained its reasons for imposing consecutive sentences here, and in light of that explanation we are satisfied that no abuse of discretion occurred.
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 Because he was convicted of conspiracy, Silkey is liable for the reasonably foreseeable acts of his co-conspirators. United States v. Williams, 894 F.2d 208, 212 (6th Cir.1990); U.S.S.G. § 1B1.3, Application Note 1. Silkey received a smaller upward departure than Sheddrick, however, because the district court concluded that some of Sheddrick's conduct (the rape of Mrs. Madison, e.g.) was not necessarily reasonably foreseeable