*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0120p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

     *Plaintiff-Appellant,*

     *v.*

MARK VAN HOOSIER,

     *Defendant-Appellee.*

No. 04-6297

>

---

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 99-00119—Curtis Lynn Collier, Chief District Judge.

Argued: March 14, 2006

Decided and Filed: April 5, 2006

Before: MARTIN, SILER, and CLAY, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Michael A. Rotker, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Jerry H. Summers, SUMMERS & WYATT, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Michael A. Rotker, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Perry H. Piper, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellant. Jerry H. Summers, SUMMERS & WYATT, Chattanooga, Tennessee, for Appellee.

---

**OPINION**

---

BOYCE F. MARTIN, JR., Circuit Judge. In this case, Mark Van Hoosier pled guilty to a four-count indictment involving manufacturing methamphetamine and possession of a firearm in connection with a drug trafficking crime. The district court accepted Van Hoosier's guilty plea and proceeded to sentence him pursuant to the five-year mandatory minimum required for possession of a firearm in connection with a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A)(i). The government now appeals alleging that Van Hoosier ought to have been sentenced pursuant to the ten-year mandatory minimum contained in 18 U.S.C. § 924(c)(1)(B)(i). For the reasons stated below, we REVERSE the district court's judgment and remand the case for imposition of the ten-year mandatory minimum.

**I.**

On June 5, 1998, two DEA agents received information that methamphetamine was being manufactured on or near the property of Stanley Layne. The agents knew that Layne previously owned several acres of land in Grundy County that had been forfeited to the United States government. The two agents went to the property and while searching for evidence of a methamphetamine lab, they encountered a man, later identified to be Van Hoosier, on an ATV. Van Hoosier had a propane torch, and a .45 caliber pistol strapped to the front of his ATV a cooler. Van Hoosier informed the agents that he was waiting for his friend who had fallen behind. When one of the agents approached Van Hoosier he fled on his ATV. Soon after the agents spotted another man, later identified to be James "Dobber" Green, on another ATV. Green was wearing a back pack and had a canvas sports bag and an SKS assault rifle strapped to the back of his ATV. Green was apprehended by the agents while attempting to flee.

On December 14, 1999, Van Hoosier and Green were charged with four counts relating to the events of June 5, 1998. Count one of the indictment alleged that Van Hoosier and Green conspired to manufacture methamphetamine. Count two alleged that Van Hoosier and Green aided and abetted one another in the manufacture of methamphetamine. Count three alleged that the two aided and abetted one another in the possession of equipment, chemicals, products and materials which may be used to manufacture methamphetamine. Finally, count four stated that:

> The Grand Jury Further charges that on or about June 5, 1998, in the Eastern District of Tennessee, the defendant MARK VAN HOOSIER, and Jimmy "Dobber" Green (not charged herein), aided and abetted by each other, did knowingly carry firearms; that is, a .45 caliber semi-automatic handgun and an SKS assault rifle, during and in relation to a drug trafficking crime; that is, the conspiracy to manufacture methamphetamine, as charged in Count One of this Indictment; the attempt to manufacture of methamphetamine, as charged in Count Two of this indictment; and the knowing and intentional possession of equipment, chemicals, products and materials which may be used to manufacture methamphetamine, as charged in Count Three of this indictment, and incorporated fully herein; in violation of Title 18, United States Code, Section 924(c).

Following his indictment, Green entered into a plea agreement with the government in which Green agreed to plead guilty to counts three and four of the indictment in exchange for the dismissal of the remaining counts. As to count four, Green admitted to carrying an SKS semiautomatic assault rifle during and in relation to a drug trafficking crime. Because of the rifle's semiautomatic nature, this offense normally carries a mandatory minimum sentence of ten years imprisonment. *See* 18 U.S.C. § 924(c)(1)(B)(i). As part of his plea agreement, however, Green was permitted to plead guilty to the lesser-included offense of carrying a firearm during and in relation to the charged drug offenses, a crime mandating a minimum sentence of only five years imprisonment. *See* 18 U.S.C. § 924(c)(1)(A)(i). Ultimately, Green was sentenced to seventy months imprisonment: a ten-month sentence on count three and a sixty-month sentence on count four.

In May 2000, Van Hoosier was released to the custody of his mother pending trial. On September 5, a magistrate judge issued a warrant for Van Hoosier's arrest and a show cause order as to why Van Hoosier's bond should not be revoked. The warrant was issued in response to a petition filed by Pretrial Services which alleged that Van Hoosier's mother had contacted Pretrial Services and informed them that Van Hoosier had absconded. Van Hoosier remained a fugitive for the next three years. On December 22, 2003, a Deputy U.S. Marshal located Van Hoosier and attempted to arrest him. Van Hoosier then engaged in a four-hour armed standoff with the marshal before finally being arrested.

Following Van Hoosier's arrest, he and the government engaged in plea agreement negotiations. A plea agreement was reached, but the plea agreement was rejected by the district court for lack of timeliness. Van Hoosier then decided to plead guilty to all four counts without the benefit of plea agreement. Prior to Van Hoosier's change-of-plea hearing, the prosecution drew up a document entitled "Factual Basis and Statutory Penalties." The document was signed by the prosecutor but not by Van Hoosier. The document reiterated the facts in the indictment, stating that Green was stopped while carrying an SKS assault rifle. The document also stated that count four (possession of a semiautomatic during the commission of a drug trafficking offense) carries "a mandatory minimum sentence of ten years which must run consecutively to any other sentence imposed." At Van Hoosier's change-of-plea hearing, Van Hoosier pled guilty to all four counts of the indictment, including count four where the following exchange occurred:

> The Clerk: Count Four. The grand jury further charges that on or about June 5, 1998, in the Eastern District of Tennessee, the defendant, Mark Van Hoosier, and Jimmy "Dobber" Green, not charged herein, aided and abetted each other, did knowingly carry firearms, that is, a .45 caliber semiautomatic handgun and an SKS assault rifle, during and in relation to a drug trafficking crime, that is, the conspiracy to manufacture methamphetamine as charged in Count 1 of this indictment, the attempt to manufacture methamphetamine as charged in Count 2 of this indictment, and the knowing and intentional possession of equipment, chemicals, products, and materials which may be used to manufacture methamphetamine as charged in Count 3 of this indictment and incorporated fully herein, in violation of Title 18, United States Code, Section 924(c).
>
> How do you plead to Count 4, Mr. Van Hoosier – guilty or not guilty?
>
> The Defendant: Guilty.

The district court then informed Van Hoosier as to the elements of each of the crimes to which he was pleading guilty. As to count four, the district court and Van Hoosier engaged in the following discussion:

> [The Court]: With respect to Count 4, the elements are: (1) the defendant committed any one of the drug offenses charged in Counts 1, 2, or 3 of the indictment, and (2) during and in relation to the commission of that drug crime, the defendant knowingly carried a firearm.
>
> Do you understand what it is you are pleading guilty to, Mr. Van Hoosier?
>
> The Defendant: Yes, Sir.

The district court then had the prosecutor inform Van Hoosier of the maximum penalty on each count, including the fact that count four carried "a mandatory minimum sentence of 10 years, which must run consecutively to any other sentence." The district court asked Van Hoosier whether, knowing the penalties at issue, he still wished to plead guilty and Van Hoosier stated that he did. Finally, Van Hoosier also affirmed both that he had read the document entitled "Factual Basis and Statutory Penalties" drawn up by the government and that the information contained in the document was correct. The district court then accepted Van Hoosier's change of plea.

A Presentence Report was subsequently prepared by the Probation Department. The Report indicated that pursuant to 18 U.S.C. § 924(c)(1)(B)(i), the mandatory minimum sentence for count four was ten years, to be served consecutive to the sentence imposed for counts one through three. Neither Van Hoosier nor the government objected to the Presentence Report.

Prior to his sentencing hearing, Van Hoosier filed a motion for a downward departure based on the disparity between his likely sentence of at least ten years pursuant to the mandatory minimum contained in 18 U.S.C. § 924(c)(1)(B)(i) and the seventy-month sentence Green received as a result of his plea agreement. The motion argued that given that it was Green carrying the semiautomatic weapon, it created an unreasonable disparity for the ten year mandatory minimum to be imposed on Van Hoosier and not Green.

A sentencing hearing was held on September 3, 2004. At the hearing, Van Hoosier's counsel argued that Van Hoosier ought to receive a downward departure based upon: (1) the disparity between his sentence and Green's sentence, (2) the Supreme Court's recent decision in *Blakely v. Washington*, 542 U.S. 296 (2004), and (3) the totality of the circumstances in the case. The government countered arguing that the district court was statutorily prohibited from giving Van Hoosier a lower sentence on count four based on the ten year mandatory minimum contained in 18 U.S.C. § 924(c)(1)(B)(i). Moreover, the government asserted that, based on Van Hoosier's absconding and his involvement in a standoff with a federal marshal, there was good reason for the disparity between his sentence and Green's sentence. The district court considered both parties' arguments and was concerned that our decision in *United States v. Williams*, 894 F.2d 208 (6th Cir. 1990), made it erroneous for the court to impose an enhanced sentence on Van Hoosier where Green, the individual actually in possession of the weapon that triggered the enhanced sentence, had not himself received the enhanced sentence. The district court dealt with these concerns by stating that:

> Based on the facts as they've been explained to the Court by counsel and also the case of *United States v. Williams*, the Court will grant the defendant's motion for a downward departure with respect to the gun sentence. Instead of actually this being a downward departure, actually what the Court is doing is treating this motion as an objection to the application of the ten-year sentence. The Court finds, based upon the facts here in *Williams*, that the five-year mandatory consecutive sentence is the appropriate sentence. So although the defendant has styled this as a motion for downward departure, the Court does not believe that it has been properly phrased. So to the extent that it's a motion, the Court will deny it; to the extent that it's an objection, the Court will grant the objection.

Having granted Van Hoosier's objection, the district court then sentenced Van Hoosier a total of seventy-eight months imprisonment — eighteen months on each of first three counts to be served concurrently, and a term of sixty months on count four, to be served consecutively to the first three counts. On September 17, 2004, the district court entered judgment. Despite what occurred at the change-of-plea hearing, the judgment reflected that Van Hoosier pled guilty to violating 18 U.S.C. § 924(c)(1)(A)(i), possession of a firearm during and in relation to a drug trafficking crime (which carries a mandatory minimum penalty of five years), rather than 18 U.S.C. § 924(c)(1)(B)(i), possession of a semiautomatic weapon during and in relation to a drug trafficking crime (which carries a mandatory minimum penalty of ten years). The government filed this timely appeal.

## II.

Both parties are in agreement as to the facts of this case. The only question raised by the parties is whether the district court possessed the authority to sentence Van Hoosier pursuant to 18 U.S.C. § 924(c)(1)(A)(i) rather than 18 U.S.C. § 924(c)(1)(B)(i). This is a question of law which we review *de novo*. *See United States v. Harris*, 397 F.3d 404, 409 (6th Cir. 2005) (noting that "[a] district court's application of § 924(c) is a question of law subject to *de novo* review") (citing *United States v. Langan*, 263 F.3d 613, 626-27 (6th Cir. 2001)).

In *Harris*, we held that the firearm type provisions in Section 924(c) are elements of the offense rather than sentencing factors. 397 F.3d at 413. Thus, a mandatory minimum based on the

firearm type contained in Section 924(c) is not binding upon a district court unless "the type of firearm involved is either admitted by the defendant or charged in the indictment and proved to a jury beyond a reasonable doubt." *Id.* at 414. Judge-found fact therefore is insufficient to trigger the imposition of the mandatory minimum created by the firearm type provisions in Section 924(c).

If a defendant admits to the type of firearm employed or the firearm type is charged in the indictment and proved to a jury beyond a reasonable doubt, then the district court is bound by the mandatory minimum triggered by the firearm type provisions in Section 924(c). Put simply, a district court is not permitted to depart below an applicable mandatory minimum. *See, e.g., United States v. Burke*, 237 F.3d 741, 745 (6th Cir. 2001) (holding that absent statutory exceptions "defendants may not be sentenced, by means of a downward departure, to a term of imprisonment or other punishment below the [mandatory] minimum imposed by the statute under which they were convicted"); *Harris v. United States*, 536 U.S. 545, 570 (2002) (Breyer, J., concurring) ("Unlike Guidelines sentences, statutory mandatory minimums generally deny the judge the legal power to depart downward, no matter how unusual the special circumstances that call for leniency."). Moreover, the Section 924(c) firearm type provisions can apply even where it is a co-defendant rather than the defendant himself that possesses the firearm during and in relation to a drug trafficking crime. *See Harris*, 397 F.3d at 414 ("It is well-established in this circuit that an individual 'can be convicted of using or carrying a firearm . . ., even though he never personally used or carried any weapon during the period charged in the indictment.'") (citations omitted).

The procedural history of this case is slightly confusing. The indictment failed to specify the provision of Section 924(c) under which Van Hoosier was being charged. The indictment merely stated that under count four Van Hoosier was being charged with violating section 924(c), not that Van Hoosier was being charged with violating section 924(c)(1)(B)(1). The lack of precision in the charging document, however, is understandable given that Van Hoosier was indicted and convicted before our holding in *Harris* clarifying that the Section 924(c) firearm type provisions are elements of the offense rather than sentencing factors. Nonetheless, despite this lack of precision, it is clear that the government in this case complied with the requirements of *Harris*. The indictment alleged that Van Hoosier was being charged with aiding and abetting Green in the knowing possession of an SKS assault rifle during and in relation to a drug trafficking crime. The indictment did not merely charge that Green possessed a firearm, it specifically indicated the type of firearm Green possessed. Thus, while the indictment did not specifically reference Section 924(c)(1)(B)(I), it did allege the facts upon which the firearm type provision was based.

Moreover, the change of plea hearing indicates that Van Hoosier admitted to the firearm type and was aware of the mandatory minimum applicable based on that firearm type. At the change-of-plea hearing the clerk read aloud to Van Hoosier the facts contained in Count Four of the indictment, including the fact that Van Hoosier was alleged to have aided and abetted Green in the possession of a semiautomatic weapon. When then immediately questioned as to how he pled to this count, Van Hoosier responded that he pled guilty to count four. Later in the hearing, the district court asked Van Hoosier to look over the document drafted by the government entitled "Factual Basis and Statutory Penalties" which contained the same facts as to count four as included in the indictment. Van Hoosier did so and informed the court that to the best of his knowledge all the facts contained in the document were correct. Thus, the evidence indicates that Van Hoosier understood the offense he was pleading guilty to at the change-of-plea hearing.[1]

---

[1] The only point of concern during the change-of-plea hearing is that when the district court informed Van Hoosier of the elements of each count, he did not indicate that count four required the government to prove that the type of firearm at issue was a semiautomatic. Again, as stated above, this oversight is understandable given that prior to our decision in *Harris*, it was unclear that the firearm type was an element of the offense rather than a sentencing factor. Moreover, the totality of the evidence indicates that Van Hoosier clearly understood the facts he was admitting to and the penalties attached to his admissions. Thus, we conclude that this minor mistake by the district court does not indicate

In addition, Van Hoosier was clearly made aware of the penalty associated with his guilty plea. The document entitled "Factual Basis and Statutory Penalties" that Van Hoosier informed the court was correct, stated that the mandatory minimum penalty associated with count four was ten years. More importantly, at the change-of-plea hearing, the prosecution read the penalties associated with his plea to Van Hoosier, including the mandatory minimum of ten years imprisonment for count four. Van Hoosier indicated that despite that these penalties, he wished to plead guilty to all the counts contained in the indictment. At no point, during the change-of-plea hearing or since then, has Van Hoosier alleged that the facts charged in the indictment were incorrect or that he was unaware of the penalties associated with his guilty plea. All that he has asserted is that the sentencing disparity between his sentence and that of his codefendant was unreasonable. Thus, under the requirements of *Harris*, Van Hoosier admitted to the firearm type provision contained in Section 924(c)(1)(B)(i). Given this admission, the ten-year mandatory minimum applies in this case.

As noted above, a district court is bound by a statutory mandatory minimum, absent a statutory exception, regardless of any extenuating circumstances. Nonetheless, the district court in this case believed that our decision in *Williams* prevented it from applying the ten-year mandatory minimum given that such a mandatory minimum had not been applied to Green. We read *Williams* differently. In *Williams*, the defendants received a firearm enhancement because their coconspirator allegedly had possessed a gun during the commission of the offense. *Id.* at 211. The district court, without explanation, did not apply this enhancement to the coconspirator. *Id.* On appeal, we held the disparity in the sentences indicated an abuse of discretion, basing our decision on two factors. *Id.* at 212-213. First, we noted that the defendants had not even been present at the scene of the crime where their coconspirator supposedly had carried a firearm. *Id.* at 212. Second, we emphasized that the coconspirator had been acquitted of the underlying weapons violation, casting doubt on whether even he had possessed a weapon during his commission of the crime. *Id.* at 212-13. Under these circumstances, we reasoned that without further explanation from the district court for the disparity it was "particularly inequitable" to enhance the defendants' sentences after declining to enhance their coconspirator's sentence. *Id.* at 213.

This case is wholly different from *Williams*. First, many of the factors in *Williams* that made imposition of the enhancement to the codefendants "particularly inequitable" are not present in this case. Unlike in *Williams,* there is no question here as to whether Van Hoosier aided and abetted Green in possessing the SKS assault rifle – Van Hoosier admitted doing so by pleading guilty to count four. Moreover, unlike in *Williams*, there is ample explanation as to why the ten-year mandatory minimum was sought by the government against Van Hoosier and not Green. The government was able to reach a plea agreement with Green while Van Hoosier absconded for three years and then when he was found, resisted arrested. Thus, the government sought the harsher penalty against Van Hoosier because it understandably felt that the harsher penalty was warranted. Thus, this case is unlike *Williams* where the lack of reasoning behind the court's imposition of the enhancement made the court's decision appear particularly inequitable.

More importantly — the fly in the buttermilk, so to speak — is that this case differs critically from *Williams* as to the type of sentencing power possessed by the district court. In *Williams,* the defendants were sentenced pursuant to the federal guidelines. Although the guidelines were mandatory pre-*United States v. Booker*, 543 U.S. 220 (2005), they nonetheless left the district court with the discretion to depart from the guidelines where circumstances, such as sentencing disparity, required such a departure. *Williams* seems to suggest nothing more than that the district court ought to have employed his discretion under the federal guidelines to not apply the enhancement to the defendants in order to avoid an inequitable sentencing disparity. In this case, however, Van

---

that an application of the ten-year mandatory minimum in this case would violate *Harris*.

Hoosier's guilty plea triggered the ten-year mandatory minimum contained in Section 924(c)(1)(B)(i). This statutory provision provides the district court with no discretion to depart from the mandatory minimum under any circumstances. Thus, as noted above, the district court was legally required to impose a ten-year mandatory minimum pursuant to Section 924(c)(1)(B)(i) as to count four even though the district court may have felt such a sentence was inequitable. The district court therefore erred by declining to imposing the ten-year mandatory minimum and convicting Van Hoosier of a lesser offense instead.

## III.

For the reasons stated above, we REVERSE the district court's judgment and remand the case for imposition of the ten-year mandatory minimum.