**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Cecil GIBSON (90–6403) and Johnny Ray Baker (90–6431), Defendants–Appellants.**

**Nos. 90–6403, 90–6431.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 8, 1991.

Decided Feb. 10, 1993.

Louis DeFalaise, U.S. Atty., R. Michael Murphy, Asst. U.S. Atty. (briefed), Lexington, KY, Jacquelyn A. Jess, Asst. U.S. Atty. (argued), Covington, KY, for U.S.

Warren N. Scoville (argued and briefed), Lewis, Scoville, Scoville, Cessna & Crawford, London, KY, for Cecil Gibson.

Stephan Charles (argued and briefed), Manchester, KY, for Johnny Ray Baker.

Before: JONES and SUHRHEINRICH, Circuit Judges; and ZATKOFF, District Judge.[*]

NATHANIEL R. JONES, Circuit Judge.

Defendants Johnny Ray Baker and Cecil Gibson appeal the sentences imposed pursuant to their guilty pleas to drug-related offenses. For the reasons that follow, we affirm in part and reverse in part.

I

Sometime in 1989, law enforcement officials received information from a confidential informant that Sam Hoskins, a purported bootlegger, had professed that he could procure drugs from his friend and neighbor Johnny Baker. Beginning on November 2, 1989, the informant arranged a number of cocaine purchases from Baker through Hoskins. In the course of these transactions, Hoskins implicated Roland Bowling.

On February 15, 1990 police arrested Hoskins and Bowling. In the course of his arrest, Bowling implicated Gibson as a source for cocaine. Bowling and Hoskins agreed to cooperate with the government and to make a statement identifying Baker as a source of their cocaine. They also agreed to arrange and surreptitiously record a cocaine purchase from Gibson. Gibson was arrested immediately after the purchase and was interrogated by FBI

[*] The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

agents soon thereafter. Gibson contends that he was highly intoxicated during both the interrogation and the recorded conversation with Bowling and Hoskins. The government conceded at the presentencing hearing that Gibson was indeed intoxicated at the time of the arrest and subsequent interrogation.

Gibson, Baker, Hoskins, and Bowling were charged in a nine-count indictment filed on April 18, 1990. Gibson and Baker were charged in count one with conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 (1988). Baker was further charged in count two with using a communication facility to facilitate drug distribution in violation of 21 U.S.C. § 843(b) (1988), and in counts three and four with distributing approximately 27.9 grams of cocaine and 28.4 grams of cocaine, respectively, in violation of 21 U.S.C. § 841(a)(1) (1988) and 18 U.S.C. § 2(a), (b) (1988). In addition to the conspiracy count, Gibson was charged in counts five and six with possession with intent to distribute approximately 28 grams of cocaine and 56 grams of cocaine, respectively, also in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2(a), (b). Count nine further charged Gibson with possession with intent to distribute approximately 48 grams of cocaine in violation of 21 U.S.C. § 841(a)(1).

Although both Baker and Gibson initially pled innocent to all charges, these pleas were later withdrawn. On August 6, 1990, Baker pled guilty to count three (distributing approximately 27.9 grams of cocaine) and Gibson pled guilty to count five (distributing approximately 28 grams of cocaine). The remaining counts against Baker and Gibson were thereafter dismissed upon motion of the government.

On November 1, 1990, the district court sentenced Baker and Gibson. The court adopted the findings and guideline recommendations of the United States Probation Office's Presentence Report, with the exception that the court reduced the Presentence Report's enhancement for the defendants' role in the offense under United States Sentencing Commission, *Guidelines Manual*, § 3B1.1 (1989) [hereinafter

U.S.S.G.], from a four- to a three-level increase. The court assigned Baker a base offense level of 19, with a corresponding guideline range of 30 to 37 months, and sentenced him to 37 months of imprisonment. Gibson was assigned a base offense level of 21, with a corresponding guideline range of 37 to 46 months, and was also sentenced to 37 months of imprisonment. The base levels of both Baker and Gibson reflected drug amounts incorporated from dismissed counts and other evidence under the theory that these constituted "relevant conduct" within the meaning of U.S.S.G. § 1B1.3. Baker and Gibson filed timely appeals.

## II

■ We first consider Baker's charge that the aggregation of cocaine quantities alleged in the dismissed counts in determining his base offense level constitutes reversible error. Because Baker was sentenced on November 1, 1990, U.S.S.G. § 1B1.3 (1990) of the sentencing guidelines guides our analysis of this issue. *See United States v. Jennings*, 945 F.2d 129, 135 n. 1 (6th Cir.1991) ("The version of the [sentencing] guidelines in effect at the time of sentencing is ordinarily applied."), *opinion clarified by*, 966 F.2d 184 (6th Cir. 1992) ("[W]hen the sentencing guidelines in effect at the time of sentencing provide for a higher range than those guidelines in effect at the time the crime was committed, an ex post facto problem exists and a court must not impose a sentence in excess of that allowed by the older guidelines."). That section provides:

(a) ... Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, ... shall be determined on the basis of the following:

.    .    .    .    .

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or com-

mon scheme or plan as the offense of conviction....[1]

The commentary to section 1B1.3 provides that subsection (a)(2) "applies to offenses for which grouping of counts would be required under § 3D1.2(d) had the defendant been convicted of multiple counts. *Application of this provision does not require the defendant, in fact, to have been convicted of multiple counts.*" U.S.S.G. § 1B1.3, comment. (n.2) (emphasis added). The commentary similarly provides that, "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." U.S.S.G. § 1B1.3, comment. (backg'd.).

This court has previously interpreted Section 1B1.3 to provide that, where a defendant pleads guilty to certain counts of an indictment in exchange for a dismissal of other counts,

> quantities of drugs that are not part of the count of conviction may be included in determining the base offense level as long as the drugs were "part of the same course of conduct or common scheme or plan as the offense of conviction." However, ... due process requires that facts used for sentencing must have " 'some minimum indicia of reliability beyond mere allegation.' " In addition, this court has required that proof presented at sentencing hearings satisfy a "preponderance of the evidence" standard.

*United States v. Robison*, 904 F.2d 365, 371 (6th Cir.1990) (citations omitted), *cert. denied*, 498 U.S. 946, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990); *see also United States v. Smith*, 887 F.2d 104, 106–8 (6th Cir.1989) (requiring sentencing court to consider drug amounts involved in dismissed charges). Whether a preponderance of the evidence supports the aggregation of drug amounts for which defendant was not convicted is reviewed by this court under the

clearly erroneous standard. *United States v. Herrera*, 928 F.2d 769, 774 (6th Cir. 1991).

In *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir.), *cert. denied*, 498 U.S. 990, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990), we considered the application of this standard of proof in the context of aggregation of drug charges:

> We believe that the guidelines do not permit the District Court to hold a defendant responsible for a specific quantity of drugs unless the court can conclude the defendant is more likely than not *actually* responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible. If the exact amount cannot be determined, an estimate will suffice, but here also a preponderance of the evidence must support the estimate. Thus when choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, a court must err on the side of caution.

(emphasis in original).

In the instant case, the district court added the 28.4 grams of cocaine alleged in count four, which was ultimately dismissed, to the 27.9 grams of cocaine alleged in the count to which Baker pled guilty. Although Baker specifically denied possession or distribution of the 28.4 grams, Baker's denial was directly contradicted by the evidence. Not only did government surveillance units witness the transfer of the 28.4 grams from Baker to Baker's middleman, but Baker was further identified as the source of the cocaine when the middleman sold the cocaine to the government informant. Given the quality and quantity of the supporting evidence, we are convinced that the district court properly aggregated the drug quantities alleged in the dismissed count in computing Baker's sentence.

---

**1.** U.S.S.G. § 3D1.2(d) provides that counts shall be grouped together "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior."

■ While Baker invites us to adopt a rule that drug amounts involved in dismissed charges may not be considered in sentencing where the amount was not in possession of the defendant at the time of his arrest, we consider such a rule ill-advised. Baker cites nothing in the guidelines suggesting that possession at the time of arrest is or should be a relevant consideration in determining whether a drug amount involved in a dismissed count should be aggregated. Moreover, the only conceivable relevance of possession under such a rule would be as a proxy for whether the defendant as a matter of fact ever possessed the amount alleged, a factor already fully taken into account in the requirement that a drug amount finding be supported by a preponderance of the evidence. Finally, we have previously held that a sentencing court may consider drug amounts that were not in possession of the defendant at the time of arrest. *See, e.g., United States v. Miller,* 910 F.2d 1321, 1327 (6th Cir.1990) (permitting consideration of amounts of drugs that defendant confessed to having sold), *cert. denied,* —— U.S. ——, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991).

■ Gibson likewise challenges the court's aggregation of drug amounts alleged in dismissed counts in computing his base offense level. He claims that the evidence underlying the aggregated amounts, consisting solely of statements he made to codefendants and FBI agents while intoxicated, was inherently unreliable and therefore insufficiently probative to establish the drug quantity in question by a preponderance of the evidence.

During a secretly recorded conversation with Hoskins and Bowling immediately prior to his arrest, Gibson discussed his possession of a single ounce of cocaine. Later that evening, immediately after his arrest, Gibson told FBI agents that he purchased three to four ounces of cocaine each week. At Gibson's presentencing hearing, the government conceded that Gibson was intoxicated "to the point where he would be ... qualified to be convicted under the Kentucky DUI statutes." J.A. at 41.

Nevertheless, on the basis of Gibson's statements, the sentencing judge aggregated five ounces of cocaine into the 28 grams to which Gibson pled guilty in determining Gibson's base offense level.

Gibson claims that our holding in *Robison* precludes aggregation of drug amounts predicated solely on evidence of questionable probative value. In *Robison,* we held that the testimony of an "admittedly ... heavy drug user" who suffered from periods of memory loss and hazy perception and who conceded that her estimation of the drug amounts in question was "totally a guess" with "no factual basis" was insufficient to establish that the defendant had possessed the drugs by a preponderance of the evidence. *Robison,* 904 F.2d at 371–72. Gibson also seeks to distinguish our decision in *United States v. Davis,* 919 F.2d 1181, 1185 (6th Cir.1990), where we upheld the district court's reliance on defendant's self-incriminating statements to a probation officer despite defendant's allegation that he suffered from psychiatric problems. Gibson notes that, in *Davis,* the district court found as a matter of fact that the defendant's mental abilities were unimpaired due to his use of medication. *Id.*

As in *Davis,* however, we review the district court's factual determination concerning the reliability of witness testimony under the clearly erroneous standard. *Id.* While we consider the reliability of Gibson's statements in this case a somewhat close question, we cannot say the district court's consideration of his inculpatory remarks constituted clear error. First, it appears that Gibson, although intoxicated, was at least reasonably coherent and articulate. More importantly, Gibson does not challenge the procedural adequacy or constitutionality of the manner in which the statements were obtained. In sum, we find no reversible error in the court's aggregation of the drug amounts in the dismissed charges in computing Gibson's offense level under the guidelines.

■ As a final matter, Baker asserts that the court's acceptance of the validity and accuracy of the information supplied in the Probation Office's Presentence Report

denied him his Sixth Amendment right to confront the witnesses against him. He contends that if the informant, codefendants, FBI agent, and probation officer, who provided the information in the report, had been subjected to cross-examination at the sentencing proceeding, the fallacies and inaccuracies of the information would have been revealed. This court recently addressed the issue of whether confrontation rights apply in sentencing proceedings in *United States v. Silverman,* 976 F.2d 1502 (6th Cir.1992). We noted that while confrontation rights do apply at a trial on the question of guilt or innocence, they do not apply in sentencing hearings. *Id.* 976 F.2d at 1510. When a defendant pleads guilty, as in this case, sentencing does not mandate confrontation and cross-examination on information that the court obtains through presentence reports and law enforcement sources. *Id.*[2]

In *Silverman,* each of the defendants appealed their sentences received after guilty pleas to possession with intent to distribute drugs. *Id.* at 1503. The sentencing judge increased the sentence of each of the defendants beyond that normally given for the quantity of drugs involved in the counts to which the defendants had pleaded guilty. *Id.* The higher sentences were predicated on the presence of other drug activity of the defendants discerned through hearsay testimony or evidence in presentence reports. *Id.* We affirmed those sentences because of the long-established principle that the constitutional protections afforded to defendants at a criminal trial, including confrontational rights, are not available at sentencing to limit the court's consideration of the background, character, and conduct of the defendant. *Id.* at 1511. The law has consistently allowed the sentencing judge to consider various types of hearsay information without the confrontation requirement if the evidence in the presentence report bears "some minimal indicia of reliability in respect of the defendant's right to due process." *Id.* at 1511 (citing *Herrera,* 928

F.2d at 773; *United States v. Robinson,* 898 F.2d 1111, 1115 (6th Cir.1990)).

As previously noted, the evidence concerning Baker's alleged drug activity to which he did not plead guilty was sufficiently reliable to accord the defendant due process in the sentencing proceeding. Therefore, we find that the district court did not err when it relied on the accuracy of the presentencing report, and Baker's right to confront witnesses against him was not violated because he had no such right in the context of the sentencing proceeding.

### III

■ Gibson and Baker next claim that the district court improperly enhanced their sentences pursuant to Section 3B1.1(b) of the guidelines based on its determination that they were supervisors or managers of the alleged cocaine conspiracy. Because this determination is primarily factual, our review is for clear error. *United States v. Williams,* 894 F.2d 208, 213–14 (6th Cir. 1990).

The sentencing guidelines provide as follows:

> Based on the defendant's role in the offense, increase the offense level as follows:
>
> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
>
> (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
>
> (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

U.S.S.G. § 3B1.1. The commentary to this section notes that factors a court should

2. Though there are strong assertions that the *Guidelines* have converted the sentencing stage into a critical phase of the criminal trial process, we nevertheless are bound, as an intermediate court, by our precedents.

consider in determining whether section 3B1.1 applies include (1) the exercise of decision-making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others. U.S.S.G. § 3B1.1, comment. (n.3). The government bears the burden of establishing the factors supporting the enhancement by a preponderance of the evidence. *United States v. Feinman*, 930 F.2d 495, 500 (6th Cir.1991).

The government notes that in *Williams*, we upheld an enhancement under Section 3B1.1(c) where the defendant conceded his responsibility for arranging the cocaine transaction at issue and indicated on numerous occasions that he could procure cocaine for further sale. *Williams*, 894 F.2d at 214. We also noted that "[t]he fact that [the defendant] had to obtain the cocaine which he was going to sell from another source does not preclude his role as an organizer or supervisor." *Id.*

Although the government suggests that *Williams* requires an expansive reading of Section 3B1.1, we believe that *Williams* on the contrary defines the outer perimeters of that provision. In virtually every instance in which we have approved an enhancement under Section 3B1.1, the scope of the operation, as well as the defendant's involvement, was significantly greater than presented here. For example, in *United States v. Barrett*, 890 F.2d 855 (6th Cir. 1989), we upheld the enhancement of a defendant's sentence under Section 3B1.1 where the defendant provided drugs for at least three buyers, procured his drugs from another state, dealt in kilograms of cocaine, involved substantial amounts of money, and had trafficked in drugs for at least four years. Likewise, in *United States v. Alvarez*, 927 F.2d 300, 303 (6th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2246, 114 L.Ed.2d 487 (1991), application of Section 3B1.1 was supported by the court's finding that the defendant was a "clear leader" of

a drug conspiracy involving many kilograms of cocaine and substantial interstate shipments. *See also Herrera*, 928 F.2d at 773, 774 (upholding application of Section 3B1.1 where defendant was able to procure kilogram quantity deliveries of cocaine on short notice).

Upon review, we find that the facts presented in the instant case failed to establish sufficient supervisory or managerial control by either Baker or Gibson to warrant application of section 3B1.1. Not only did Baker provide cocaine in only two of the transactions listed in the indictment, but, more importantly, both sales were solicited by Hoskins, suggesting that Hoskins rather than Baker exercised the control over their dealings. Moreover, the government failed to establish any relationship between Baker and anyone other than Hoskins and Bowling. The evidence with respect to Gibson is similarly deficient: Gibson did not initiate any of the transactions referred to in the indictment, nor did the government offer any evidence that Gibson exercised control over anyone else.

The government counters that the Defendants' discretion as to when and to whom to sell, the fact that they were paid for the drugs, and that the Presentence Report referred to them as "established" drug dealers provides adequate support for the enhancement. We cannot agree. The characteristics adduced by the government are insufficiently discriminating to pick out Baker and Gibson from the vast majority of everyday buyers and sellers of drugs. While we have indeed granted sentencing courts broad discretion in fitting Section 3B1.1 to the factual context before them, we have also indicated that more is required than a mere buyer/seller relationship. *See Barrett*, 890 F.2d at 867. To uphold the district court's finding on the facts presented here could, we fear, lead to the enhancement of sentences for drug conspiracy defendants becoming virtually a matter of course. We are confident that neither Congress nor the United States Sentencing Commission contemplated so drastic a result.

We also find persuasive the reasoning of *United States v. Brown*, 944 F.2d 1377 (7th Cir.1991), where the Seventh Circuit vacated a district court's application of Section 3B1.1(c) to a "middleman" in a drug distribution conspiracy. Noting that Section 3B1.1 requires "the exercise of some authority in the organization, the exertion of some degree of control, influence, or leadership," *id.* at 1385, the court stated: "The central concern of § 3B1.1 is relative responsibility. Under the Guidelines, those who play an aggravating role in the offense are to receive sentences that reflect their greater contributions to the illegal scheme. [The defendant's] status as a distributor, standing alone, does not warrant an enhancement under § 3B1.1." *Id.* at 1381; *accord United States v. Thompson*, 944 F.2d 1331, 1349–50 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1177, 117 L.Ed.2d 422 (1992); *United States v. Fuller*, 897 F.2d 1217, 1220–21 (1st Cir.1990); *see also United States v. Mares–Molina*, 913 F.2d 770, 773 (9th Cir.1990).

The evidence adduced by the government was insufficient to support the enhancement under Section 3B1.1 for either Baker or Gibson's sentence. Accordingly, we remand this aspect of their cases for resentencing. Because we find the evidence on this issue fatally deficient, we need not address Defendants' further contention that the government failed to establish the existence of five coconspirators, as required under Section 3B1.1(a) and (b).

### IV

■ As a final matter, Baker contends that the district court abused its discretion in refusing to grant him a two-level reduction in sentencing for his acceptance of responsibility. Section 3E1.1 of the guidelines provides that, if a defendant "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct," a sentencing judge may reduce his offense level by two levels. The determination of the sentencing judge, however, is entitled to great deference on review. U.S.S.G. § 3E1.1, comment. (n.5); *accord United States v. Snyder*, 913 F.2d

300, 305 (6th Cir.1990) ("Because the trial court's assessment of a defendant's contrition will depend heavily on credibility assessments, the 'clearly erroneous' standard will nearly always sustain the judgement of the district court in this area.") (citations omitted), *cert. denied,* 498 U.S. 1039, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991).

The evidence indicated that Baker denied his involvement in cocaine distribution throughout the lower court proceedings and consistently tried to shift the blame to others. Far from clearly erroneous, we believe the district court's denial was clearly correct.

### V

For the foregoing reasons, we REVERSE the enhancement of Defendants' sentences under Section 3B1.1 of the guidelines, AFFIRM all other aspects of Defendants' sentences, and REMAND for resentencing.