30 F.3d 134
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Clairmont MELVILLE, Defendant-Appellant.
 No. 93-3685.
 United States Court of Appeals, Sixth Circuit.
 June 21, 1994.
 
 Before: MARTIN, RYAN, and SUHRHEINRICH, Circuit Judges.
 BOYCE F. MARTIN, JR., Circuit Judge.
 
 
 1
 Clairmont Melville appeals his jury conviction for conspiring to possess with the intent to distribute over fifty grams of cocaine base, claiming that his right to a speedy trial under the Speedy Trial Act and the Sixth Amendment was violated. Melville also challenges, on numerous grounds, the district court's application of the Sentencing Guidelines. For the following reasons, we affirm.
 
 
 2
 * In the summer of 1990, the Bureau of Alcohol, Tobacco and Firearms and the Columbus Police Department Narcotics Unit began an investigation of individuals who were operating a series of crack houses in Columbus, Ohio. Testimony at trial established that Ken Adams, a native of Guyana, came to Columbus from New York City in 1988. Soon after arriving, Adams began to sell crack cocaine from ever-shifting locations in the city. To supply his customers, Adams regularly traveled to New York and purchased kilogram quantities of cocaine.
 
 
 3
 On one of these trips in late 1989, Adams ran into his childhood friend from Guyana, Clairmont Melville. After Melville related that he was about to be laid off from his job, Adams offered Melville a position as a courier of cocaine between New York and Columbus. Over the course of the next year, Melville became one of Adams' trusted associates.
 
 
 4
 In Columbus, Melville often served as the on-site manager of Adams' crack house, dispensing rocks of crack cocaine to "salespeople" and collecting the sales proceeds. Melville generally had little direct contact with the customers, preferring instead to deal through other employees, including Aaron "Jamaican Tony" Farley, Michael "Dog" Watson, Theresa Carter, and Tina Sutton. On occasion, Melville also packaged cocaine for sale and delivered cocaine supplies to the various crack houses. During this time, Melville regularly carried a gun.
 
 
 5
 Melville's other major role involved accompanying Adams on his trips to New York. Every few weeks, Adams would shut down his crack house and travel to New York with Farley and Melville. Melville frequently returned to Columbus by Greyhound bus with cocaine concealed in a carry-on bag.
 
 
 6
 In August 1990, ATF agents made five controlled purchases of crack cocaine (for a total of one gram) at two residences that were being used as crack houses by Adams and his associates. On August 30, ATF agents executed a search warrant at the crack house located at 1791 Franklin Park South. Inside the house, the agents found Melville, Farley, and four other individuals. They also discovered a loaded .357 revolver, ammunition, cocaine residue, and drug paraphernalia. Following a brief detention, Melville was released.
 
 
 7
 In November, Adams moved the location of his crack house first to 1157 East Livingston Road, then to 613 and 660 South Champion Avenue, and finally to 1401 Lockbourne Road. After undercover officers made numerous controlled purchases at these locations, Columbus Police detectives executed a search warrant at 660 South Champion Avenue on November 26. During the search, the officers found Carter, Watson, and another woman. They also uncovered 3.1 grams of crack, drug paraphernalia, and $160.00. Three days later, the detectives executed a search warrant at the 1401 Lockbourne Road location. Inside the home, the officers found Farley, Melville, and Sutton. A .22 caliber handgun was discovered in the room with Farley and Melville. The officers also recovered drug paraphernalia, cash (including marked money from the controlled buys), and drug residue. Melville was arrested on aggravated trafficking charges. On December 10, these state charges were dismissed pending federal indictment. After his release from jail, Melville returned to New York.
 
 
 8
 A federal grand jury returned a two-count indictment against Melville and Adams on April 18, 1991. Count One charged both defendants with conspiring to distribute and possess with the intent to distribute over fifty grams of cocaine base, in violation of 21 U.S.C. Sec. 846. Count Two charged Adams alone with possession of over five grams of crack cocaine with the intent to distribute. On April 19, 1991, an arrest warrant was issued for Melville.
 
 
 9
 Melville was arrested in New York on March 30, 1992. After a New York magistrate judge signed a commitment order on April 8, Melville was transported to the Southern District of Ohio, arriving at the Franklin County Jail on April 14. Although a magistrate judge in Columbus appointed counsel for Melville on May 28, Melville did not appear before a judicial officer until his arraignment on July 17.
 
 
 10
 Trial, initially scheduled for August 3, was rescheduled several times after Melville's first two appointed attorneys were disqualified by the district court because they represented other Adams associates. Melville's trial counsel subsequently filed two motions for a continuance to gain additional time to prepare for trial.
 
 
 11
 Following a five-day trial, a jury convicted Melville of conspiracy on November 13. On June 10, 1993, the district court sentenced Melville to a 235-month term of imprisonment. This timely appeal followed.
 
 II
 
 12
 Melville contends that the three-month delay between his arrest and arraignment constitutes a violation of his right to a speedy trial. He also claims that the government moved to disqualify his first two appointed counsel merely to gain a tactical advantage, further delaying the start of his trial in violation of the Sixth Amendment. We find both arguments to be without merit.
 
 
 13
 Under the Speedy Trial Act, a defendant must be brought to trial within seventy days from the date of indictment or from the date on which the defendant appears before a judicial officer of the court in which the charge is pending, whichever is later. 18 U.S.C. Sec. 3161(c)(1); United States v. Moran, 998 F.2d 1368, 1370 (6th Cir.1993). As Melville did not appear before a judicial officer in the Southern District of Ohio until July 17, he cannot argue that the seventy-day period was exceeded before that date. With regard to the period following July 17, it is undisputed that less than seventy days elapsed before the commencement of Melville's trial. Because the "temporal strictures of the Act" were not violated, United States v. Tinson, No. 92-3631, 1994 WL 162402, at * 1, 1994 U.S.App. LEXIS 9574, at * 4 (6th Cir. May 4, 1994), Melville's Speedy Trial Act claim must fail.
 
 
 14
 Melville's constitutional claim is similarly unavailing. In determining whether a defendant has been deprived of his Sixth Amendment right to a speedy trial, this Court considers four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the degree of prejudice to the defendant. Barker v. Wingo, 407 U.S. 514 (1972); United States v. White, 985 F.2d 271, 275-76 (6th Cir.1993). We regard no single factor as determinative. Barker, 407 U.S. at 533.
 
 
 15
 After careful consideration, we conclude that, on balance, the factors weigh against Melville. Particularly in light of Melville's complicity in a number of pretrial continuances, the length of the delay was not presumptively prejudicial. See White, 985 F.2d at 275 (concluding that a "six-and-one-half month delay does not rise to the level of constitutional violation"). In addition, Melville has not shown that government employed improper dilatory tactics or used the delay to gain unfair advantage. Most importantly, Melville makes no showing that his defense was impaired in any way and utterly fails to demonstrate that he suffered "substantial prejudice" from the delay. Id. at 276 (noting that this Court "requires a showing of 'substantial prejudice' " (citation omitted)). Because the mere fact that Melville asserted his speedy trial right in a pretrial motion is insufficient to swing the balance in his favor, we find that no Sixth Amendment violation occurred.
 
 III
 
 16
 Melville maintains that the district court attributed an excessive quantity of cocaine to him for sentencing purposes. Relying on evidence at trial indicating that Melville transported two to four kilograms of cocaine from New York to Columbus each month for more than a year, the district court held Melville accountable for a total of twenty-four kilograms of cocaine--two kilograms per month for one year. Melville challenges this calculation, claiming that the government failed to present sufficient reliable evidence linking him to this amount.
 
 
 17
 This Court accepts the district court's factual findings regarding the amount of cocaine for which a defendant is to be held accountable unless clearly erroneous. United States v. Baro, 15 F.3d 563, 568-69 (6th Cir.1994) (citing United States v. Walton, 908 F.2d 1289, 1300-01 (6th Cir.), cert. denied, 498 U.S. 990 (1990)); see also 18 U.S.C. Sec. 3742(e) (providing that "[t]he court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous"). For sentencing purposes, the calculation of the amount of drugs involved in the crime must be supported by a preponderance of the evidence. United States v. Zimmer, 14 F.3d 286, 290 (6th Cir.1994). Where the actual amount is uncertain, the district court is encouraged to "err on the side of caution" and ensure that "the defendant is more likely than not actually responsible for a quantity greater than or equal to the quantity for which [he] is being held responsible." Walton, 908 F.2d at 1302.
 
 
 18
 Here, the government presented an abundance of testimony at trial regarding the quantities of crack sold at the various crack houses and the amount transported by Melville during regular trips to and from New York. The evidence established that Melville was intimately involved in the conspiracy for more than a year and regularly carried more than two-kilogram quantities of cocaine on his monthly trips. In light of this testimony, the district court certainly erred "on the side of caution" in arriving at a total quantity of twenty-four kilograms. Accordingly, we decline to set aside the district court's finding.
 
 IV
 
 19
 Melville challenges the district court's imposition of a two-level enhancement pursuant to Section 2D1.1(b)(1) of the Sentencing Guidelines for possession of a firearm during the commission of a drug offense. According to Melville, the government never established that the weapon seized at the time of his arrest in November 1990 was connected to the drug offense. He also contends that any testimony regarding the possession of weapons by other members of the conspiracy was conclusory and cannot support the enhancement. We are not persuaded.
 
 
 20
 Under the Sentencing Guidelines, Section 2D1.1's firearm enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. Sec. 2D1.1, comment. (n. 3). This Court also recognizes that "[p]ossession of a firearm during the commission of a drug offense creates a presumption that the possession is connected with the drug offense." United States v. Chalkias, 971 F.2d 1206, 1216 (6th Cir.), cert. denied, 113 S.Ct. 351 (1992). Once the district court determines that a defendant possessed a firearm during a drug-related crime, the burden shifts "to the defendant to show that it was clearly improbable that the weapon was connected with the offense." United States v. Cochran, 14 F.3d 1128, 1132 (6th Cir.1994) (citing United States v. Duncan, 918 F.2d 647, 651 (6th Cir.1990), cert. denied, 111 S.Ct. 2055 (1991)). Because Melville had a .22 caliber handgun in his possession when arrested on November 30, 1990, and he has failed to make any showing that the firearm was not connected with a narcotics offense, the district court was justified in applying a two-level enhancement pursuant to Section 2D1.1.
 
 
 21
 We note, moreover, that Melville may be held accountable for the possession of weapons by other members of the conspiracy. United States v. Sanchez, 928 F.2d 1450, 1459 (6th Cir.1991) (for a weapon possession enhancement to be proper, the government need only demonstrate that some member of the conspiracy possessed a weapon and that the possession would be reasonably foreseeable by other members). Numerous witnesses testified at trial that Melville, "Jamaican Tony," and "Dog" regularly carried guns. A narcotics officer also related that Dog, at Jamaican Tony's command, displayed his weapon to the undercover officer during a November 1990 purchase. Given the ample evidence heard by the trial judge regarding the conspiracy and its members, the district court did not err in finding that other members' possession of weapons was reasonably foreseeable by Melville. United States v. Medina, 992 F.2d 573, 592 (6th Cir.1993), cert. denied, 114 S.Ct. 1049 (1994).
 
 V
 
 22
 Melville argues that the district court improperly enhanced his sentence pursuant to Section 3B1.1(c) of the Sentencing Guidelines based upon its determination that he was a manager or supervisor of the conspiracy's criminal activity. Under Section 3B1.1(c), a district court is directed to increase a defendant's offense level by two levels "[i]f the defendant was an organizer, leader, manager or supervisor in any criminal activity." U.S.S.G. Sec. 3B1.1(c). In determining whether Section 3B1.1 applies, the court may consider factors such as the defendant's "exercise of decision making authority, the nature of the participation in the commission of the offense, ... and the degree of control and authority exercised over others." Id. at comment. (n. 3). We review the district court's factual determinations for clear error. United States v. Gibson, 985 F.2d 860, 865 (6th Cir.), cert. denied, 113 S.Ct. 2981 (1993).
 
 
 23
 Here, ample evidence supports the application of a two-level enhancement under Section 3B1.1(c). Testimony at trial established that Melville was one of Adams' trusted assistants, charged with overseeing the day-to-day operations of the various crack houses. In this role, Melville supplied the "salespeople" with crack, collected and counted the money, and supervised numerous lower level employees. Given this evidence, the district court did not err in determining that Melville was a manager or supervisor within the meaning of Section 3B1.1(c).
 
 VI
 
 24
 For the foregoing reasons, the judgment of the district court is affirmed.