43 F.3d 1473
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Steven Brian NIEMI, Defendant-Appellant.
 No. 94-1194.
 United States Court of Appeals, Sixth Circuit.
 Dec. 8, 1994.
 
 Before KENNEDY, CONTIE, and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Steven Brian Niemi appeals the district court's sentencing determinations. We affirm.
 
 I.
 
 2
 On April 29, 1993, defendant-appellant Steven Brian Niemi ("Niemi") was named in a seven-count Indictment charging him with possessing Ephedrine, a "listed precursor chemical," knowing that it would be used to manufacture Methcathinone, a Schedule I controlled substance, in violation of 21 U.S.C. Sec. 841(d)(2) on September 30, 1992 (Count One), November 9, 1992 (Count Four), December 7, 1992 (Count Five), and January 12, 1993 (Count Six). Counts Two and Three charged Niemi with knowingly and intentionally possessing Toluene, a "listed essential chemical," knowing that it would be used to manufacture Methcathinone. Count Seven charged Niemi with knowingly and willfully conspiring to manufacture Methcathinone in violation of 21 U.S.C. Sec. 846.
 
 
 3
 On July 26, 1993, Niemi pled guilty to Count One of the Indictment pursuant to a written plea agreement which provided (in relevant part):
 
 
 4
 [T]he United States and the defendant agree and stipulate that[:]
 
 
 5
 1. In the fall of 1992, Steven Brian Niemi asked George Hendrickson if he (Niemi) could have an order of "beaners" (Ephedrine) delivered to a residence owned by Hendrickson. Hendrickson agreed and on or about September 28, 1992, 40,000 25mg. Ephedrine pills from Nationwide Purveyors, Pittsburgh, Pa., were delivered to Hendrickson's house[.]
 
 
 6
 2. On November 15, 1992, Steven Brian Niemi had 12,000 25mg. Ephedrine pills from Nationwide Purveyors delivered to his home at 125 Silver St., Ishpeming at a cost of $94.00. The defendant obtained 12,000 more Ephedrine pills on December 3, 1992, for $96.00; 14,000 more 25 mg. pills on January 8, 1993, for $112.00; and 12,000 more on February 15, 1993, for $97.00.
 
 
 7
 Plea Agreement at 4.
 
 
 8
 The United States Probation Office recommended a base offense level of 28 in Niemi's presentence report. Though Niemi did not file objections to the presentence report, his attorney noted (at the sentencing hearing) that Niemi did not recall purchasing Ephedrine in February 1993. The United States agreed to check United Parcel Service records to determine whether Niemi had, in fact, purchased the 12,000 Ephedrine pills in February 1993.
 
 
 9
 When Niemi's sentencing hearing reconvened on February 3, 1994, the United States presented United Parcel Service delivery records to the court revealing that the February 1993 order of Ephedrine had been delivered to Niemi's residence to an unidentified man who paid for the pills. The United States also offered into evidence five Ephedrine invoices from Nationwide Purveyors. The first invoice revealed a September 1992 shipment of 40,000 Ephedrine pills to George Hendrickson (Niemi's accomplice). The other four invoices (including the February 1993 invoice) revealed that the purchases were made by Niemi. Though Niemi continued to deny his involvement in the February 1993 Ephedrine delivery, he admitted that he had no alternative explanation for why the drugs would have come to his home in his name.
 
 
 10
 Absent proof that others were using Niemi's name and address to receive Ephedrine shipments without his permission, the district court concluded that the United States had met its burden of establishing that the 1993 Ephedrine delivery was attributable to Niemi for sentencing purposes. After adjusting Niemi's base offense level (28) by three levels for acceptance of responsibility and four levels for substantial assistance to authorities (pursuant to U.S.S.G. Sec. 5K1.1), Niemi's resulting offense level (21) and criminal history category (I) resulted in a sentencing guideline range of 37-46 months imprisonment. The district court judge rejected Niemi's request for a downward departure and sentenced Niemi to 37 months imprisonment to be followed by three years of supervised release. Niemi timely appealed.
 
 II.
 Quantity of Drugs Attributable to Niemi
 
 11
 Niemi argues that the district court overstated the quantity of drugs attributable to him. "Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." U.S.S.G. Sec. 1B1.3, comment. (backg'd.). "[I]n a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." Id. We review the district court's factual conclusions under a clearly erroneous standard. United States v. Gibson, 985 F.2d 860, 863 (6th Cir.) (citation omitted), cert. denied, 113 S.Ct. 2981 (1993).
 
 
 12
 In his plea agreement, Niemi acknowledged that he ordered and received 12,000 Ephedrine pills on February 15, 1993, and agreed that his base offense level should be determined using the 89,000 pill figure which included the February 1993 delivery. Plea Agreement at 5. Niemi, in fact, executed the plea agreement, acknowledged that he had read and understood the plea agreement, and failed to object to any of the stipulated facts when read aloud by the government during his plea proceedings.
 
 
 13
 Though Niemi claims that he did not order or receive the February 1993 shipment of Ephedrine pills, he has no alternative explanation for why the pills would have come to his home in his name with his customer number. In light of Niemi's admissions and the documentary evidence, the district court properly determined the quantity of Ephedrine attributable to Niemi. We therefore reject Niemi's first assignment of error.
 
 Role in the Offense
 
 14
 Niemi argues that he should have been given an adjustment (or downward departure) for being a minor participant in the criminal offense pursuant to U.S.S.G. Sec. 3B1.2 or Sec. 5K2.0. "The culpability determination is 'heavily dependent upon the facts,' and the defendant has the burden of proving mitigating factors by a preponderance of the evidence." United States v. Perry, 908 F.2d 56, 58 (6th Cir.) (citations omitted), cert. denied, 498 U.S. 1002 (1990). Though we would normally review the district court's determination for clear error, United States v. Anders, 899 F.2d 570, 580 (6th Cir.), cert. denied, 498 U.S. 990 (1990), Niemi failed to object to the probation officer's recommendation. Accordingly, we will not reverse the district court absent plain error. See United States v. Fountain, 2 F.3d 656, 669-70 (6th Cir.) ("Absent 'plain error,' this court will not address claims of alleged misapplication of the guidelines unless the defendant first raised the claim before the district court."), cert. denied, 114 S.Ct. 608 (1993). Plain error is an error that seriously affects the fairness, integrity or public reputation of judicial proceedings. United States v. Chalkias, 971 F.2d 1206, 1212 (6th Cir.) (citations omitted), cert. denied, 113 S.Ct. 351 (1992).
 
 
 15
 A defendant is entitled to have his offense level decreased by four levels "[i]f the defendant was a minimal participant in any criminal activity," U.S.S.G. Sec. 3B1.2(a), or by two levels "[i]f the defendant was a minor participant in any criminal activity[.]" U.S.S.G. Sec. 3B1.2(b). Moreover, a court may impose a sentence outside the established sentencing guideline range if the court finds " 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.' " U.S.S.G. Sec. 5K2.0 (quoting 18 U.S.C. Sec. 3553(b)).
 
 
 16
 Because federal sentencing is based upon all relevant conduct, the crime to which Niemi pled guilty (possession of Ephedrine with knowledge that it would be used to manufacture Methcathinone) does not control the availability of a sentence reduction for his role in the offense. Accordingly, if the facts to which Niemi stipulated reveal that his crimes involved more than one person and that he occupied a minor or minimal role in the criminal offense, then an adjustment pursuant to Sec. 3B1.2 would be justified. The stipulations reveal, however, that Niemi was involved in a conspiracy to manufacture Methcathinone and that he used two others, George Hendrickson and Jana Tasson, to procure Ephedrine, Toluene and Acetone.
 
 
 17
 Because the district court's refusal to reduce Niemi's sentence for his role in the offense was not plain error, we reject Niemi's second assignment of error.
 
 
 18
 Accordingly, we AFFIRM.