47 F.3d 1171
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James NARLOCK, Defendant-Appellant.
 No. 94-1072.
 United States Court of Appeals, Sixth Circuit.
 Jan. 12, 1995.
 
 Before: KEITH, JONES and MILBURN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendant-Appellant James Narlock ("J. Narlock") appeals his sentence from the United States District Court for the Eastern District of Michigan, Northern Division. For the reasons stated below, we AFFIRM the sentence as to the leadership enhancement pursuant to U.S.S.G. Sec. 3B1.1(a) and VACATE AND REMAND for resentencing in accordance with this opinion.
 
 I. Statement of the Case
 
 2
 On August 11, 1993, a federal grand jury in the Eastern District of Michigan, Northern Division, indicted J. Narlock on 14 counts of a 17 count indictment. The indictment charged J. Narlock with conspiring to possess with intent to distribute, conspiring to distribute and distribution of cocaine, in violation of 21 U.S.C. Sec. 841(a)(1); use of a communication facility (a telephone) to facilitate the conspiracy to distribute cocaine, in violation of 21 U.S.C. Secs. 841(a)(1), 843(b) and 846; interstate travel with the intent to promote and actual promotion of unlawful activity, in violation of 18 U.S.C. Sec. 2; and possession and aiding and abetting the possession with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2.
 
 
 3
 On October 14, 1993, pursuant to a Rule 11 Plea Agreement, J. Narlock pled guilty to the conspiracy charge and the government dropped the remaining charges. The plea agreement further recommended J. Narlock's sentence be limited to the midpoint of the applicable sentencing guideline range.
 
 
 4
 The presentence report recommended a base offense level of 34 pursuant to U.S.S.G. Sec. 2D1.1(a)(5) which requires a base offense level of 34 when at least 15 but less than 50 kilograms of cocaine is involved in the offense. The presentence report also recommended a 4 point upward adjustment pursuant to Sec. 3B1.1(a) for an aggravating role in the offense and a 3 point downward adjustment pursuant to Sec. 3E1.1 for acceptance of responsibility. The total offense level recommended was 35. The court ultimately accepted the government's base offense level recommendation over Narlock's objections. The sentencing guideline range for a base offense level of 35, criminal history category I, is 168 to 210 months. In line with the plea agreement the district court sentenced J. Narlock to 180 months, less than fifty percent of the applicable guideline range.
 
 II. Statement of Facts
 
 5
 J. Narlock, his brother, Thomas Narlock ("T. Narlock") and Richard Shapiro ("Shapiro") were indicted for their roles in the conspiracy. J. Narlock and Shapiro would obtain and transport cocaine into Michigan for distribution to others, including T. Narlock. J. Narlock and Shapiro were arrested while attempting to transport approximately 680 grams of cocaine from North Carolina to Michigan. The government obtained information from Kenneth and Susan Rohrer ("Mr. Rohrer," "Mrs. Rohrer" and together "the Rohrers") that J. Narlock was supplying them with one to three ounces of cocaine every three to four weeks. J. Narlock admitted to supplying cocaine to Mrs. Rohrer for approximately three years. After arresting J. Narlock and Shapiro, the government raided J. Narlock's residence in Burlington, North Carolina, and obtained a record of drug transactions.
 
 
 6
 The probation officer who prepared the presentence report calculated the total amount of cocaine as follows: 2,041 grams from June 1990 to June 1993 sales to the Rohrers (estimating 56.7 grams per month over a 36 month period); 56.7 grams sold on July 2, 1993; 85.05 grams sold on July 3, 1993; 680 grams seized from J. Narlock's residence on July 30, 1993; and 27,216 grams calculated from records seized from J. Narlock's residence. The transactions in the records totalled approximately 4,536 grams of cocaine sold during the six month period from the end of January through the end of July. The 27,216 gram figure was calculated by multiplying the 4,536 grams by 6 in order to estimate drug transactions over a three year period. The amount totalled 30,078.75 grams.
 
 
 7
 At the sentencing hearing J. Narlock objected to the calculations in the presentence report. The district court, however, based its sentencing on a different amount of cocaine estimated from the drug records by the government during the sentencing hearing. The government argued the records reflected 8,204 grams of cocaine had been sold to fourteen people from the end of January 1993 to the end of July 1993.[1] The government also offered Mr. Rohrer's testimony that in a conversation between he and J. Narlock, J. Narlock calculated he would sell between $900,000 and $1,000,000 of cocaine in 1993. Dividing the $900,000 amount by $1400, a typical sale price for an ounce of cocaine, the government calculated J. Narlock would have sold approximately 18 kilograms of cocaine in 1993.
 
 
 8
 Although J. Narlock's counsel raised the point that the presentence report indicated J. Narlock sold approximately 4.5 kilograms over the six month period instead of over 8 kilograms, the district court did not consider the discrepancy between the government's calculation and the calculation in the presentence report. From the transcript of the sentencing hearing it appears the district court did not understand what defense counsel was trying to argue and did not recognize the conflict between the two figures. This is supported by the fact the district court adopted the probation officer's calculations at the end of his discussion of this issue during the sentencing hearing apparently unaware the calculations were different from those made by the government.
 
 
 9
 J. Narlock further argued that the extrapolation of the 4,536 grams, or any amount, over a period of three years was error because there was no evidence presented which showed J. Narlock sold drugs to persons other than the Rohrers before January 1993. The government argued that even though Mrs. Rohrer's grand jury testimony, that there were other coconspirators, did not establish a time frame it was reasonable to infer there were other customers based on the records and J. Narlock's statement he expected to make up to a million dollars in that year. The government cited Application note 12 to Sec. 2D1.1 which allows the court to approximate the quantity of a controlled substance when the seized amount does not reflect the scale of the offense and opined:
 
 
 10
 So even if there is an absence of accurate records as to what was sold beforehand, I think it's a reasonable inference he wasn't selling just to the Rohrers where the drug records listed a variety of other people throughout the six months period of time. And the court can look at his statement as to the quantity that he was selling over the course of the year in estimating the scale that would be applicable to the defendant.
 
 
 11
 J. Narlock countered stating there was a surge in the business at the beginning of 1993. The district court examined the evidence and concluded "the evidence taken as a whole demonstrates the government has met its proof beyond a preponderance of the evidence that more than 15 kilograms of cocaine were involved in this conspiracy for which the defendant is responsible." Specific findings, however, were not made as to the amount of drugs sold in the conspiracy. Rather, the court concluded:
 
 
 12
 It is inconceivable to me that there would be a drug conspiracy involving exactly one customer up until January of 1993 and then suddenly the thing blossoms by a factor of -- geometrically progresses almost immediately to a wide scale full blown redistribution conspiracy. That's not believable. I don't accept that version of interpretation of the evidence and, in fact, reject it.
 
 
 13
 I find that the evidence taken as a whole demonstrates that Mr. Narlock was dealing with other individuals for a period of time -- probably not to the extent, not to the full volume of that eight kilograms over a six months period that's demonstrated in these records -- but the fact that these records do not go back to 1992 does not demonstrate that there was no activity, just that the other records simply weren't found or were destroyed or hidden or whatever it may have been, or perhaps didn't exist....
 
 
 14
 [I]f he were dealing in only half of [16 to 18 kilograms annually] he would have reached the 15 kilogram level by examining the period of time beginning only with January of 1992. Had he been dealing in only, say, a third of that quantity in the years prior, in other words, if his business didn't double as apparently is true from the Rohrer testimony, but if it in fact, tripled then one would have to go back only to the beginning of 1991 and assume the quantities averaged out to about a third of that, in other words, about six kilograms per year, and still that 15 kilogram level is reached.
 
 
 15
 The district court next discussed the upward adjustment for aggravating role in the offense. He determined the drug records reflecting fourteen customers and tens of thousands of dollars in cocaine and the testimony of the Rohrers constituted sufficient evidence to conclude the conspiracy consisted of at least five participants meriting a four level increase pursuant to 3B1.1(a).
 
 III. Discussion
 
 16
 A. The Calculation of the Amount of Cocaine
 
 
 17
 This court reviews a district court's factual findings regarding the amount of cocaine attributed to a defendant under a clearly erroneous standard. United States v. Baro, 15 F.3d 563, 568 (6th Cir.), cert. denied, 115 S.Ct. 285 (1994) (citing United States v. Walton, 908 F.2d 1289, 1300-01 (6th Cir.), cert. denied, 498 U.S. 990 (1990)). "For sentencing purposes, the calculation of the amount of drugs involved in a crime must be supported by a preponderance of the evidence." Id. (citing United States v. Moreno, 899 F.2d 465, 473 (6th Cir. 1990)). The applicable standard is best articulated in Walton in which the court states:
 
 
 18
 We believe that the guidelines do not permit the District Court to hold a defendant responsible for a specific quantity of drugs unless the court can conclude that defendant is more likely than not actually responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible. If the exact amount cannot be determined, an estimate will suffice, but here also a preponderance of the evidence must support the estimate. Thus when choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, a court must err on the side of caution.
 
 
 19
 Walton, 908 F.2d at 1302. (emphasis in original).
 
 
 20
 In the instant case, the district court impermissibly guesses at the likely amount of cocaine sold by J. Narlock. While it is possible J. Narlock sold 15 kilograms or more during the course of the conspiracy, there is insufficient evidence in the record on which to base the extrapolations made by the district court. When J. Narlock's counsel argued the Rohrers were the only customers prior to January 1993, the judge asked what evidence he had to prove there were no other coconspirators at that time. That was the wrong standard. The government bears the burden of proving the elements of an enhancement provision when such provision is disputed. United States v. Silverman, 889 F.2d 1531, 1535 (6th Cir. 1989). Under Walton all facts need not be proven by a preponderance, however "where a fact is crucial to the determination of a defendant's guidelines base offense level or criminal history score then it must be proven to such a degree." Walton, 908 F.2d at 1302. While the government pointed to Mrs. Rohrer's testimony that two others were involved in the offense, the government did not establish the time frame in which others were involved in the distribution of the cocaine. The length of time J. Narlock sold to the persons represented in the record is a fact crucial to determining how much cocaine can be attributed to J. Narlock. Moreover, the court did not explain why it adopted the probation officer's report but extrapolated based on the government's calculation.
 
 
 21
 "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Moreno, 933 F.2d 362, 374 (6th Cir.) cert. denied, 112 S.Ct. 265 (1991) (quoting United States v. Perez, 871 F.2d 45, 48 (6th Cir.), cert. denied, 492 U.S. 910 (1989)). In this case a mistake has been made. The evidence is insufficient to support the district court's conclusion.
 
 B. Aggravating Role Adjustment
 
 22
 J. Narlock argues the district court erred by enhancing his base offense level for playing an aggravating role in the offense. U.S.S.G. Sec. 3B1.1(a) provides for a 4 level increase "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." The commentary to 3B1.1, Application note 4, lists several factors the court should consider in distinguishing a leadership role. They include:
 
 
 23
 the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity and the degree of control and authority exercised over others.
 
 
 24
 This court reviews factual findings concerning a Sec. 3B1.1(a) enhancement for clear error. United States v. Alvarez, 927 F.2d 300, 303 (6th Cir.) cert. denied, 500 U.S. 945 (1991) (citing United States v. Barrett, 890 F.2d 855, 867-68 (6th Cir. 1989).
 
 
 25
 In United States v. Gibson, 985 F.2d 860 (6th Cir.) cert. denied, 112 S.Ct. 315 (1991) this court discussed with approval its decision in Barrett to uphold an enhancement "where the defendant provided drugs for at least three buyers, procured his drugs from another state, dealt in kilograms of cocaine, involved substantial amounts of money, and had trafficked in drugs for at least four years." Gibson, 985 F.2d at 866 (citing Barrett, 890 F.2d 855). The Gibson court reversed an enhancement where the defendants engaged in only two transactions both solicited or initiated by a third party. The facts in the instant case are much more similar to the facts in Barrett than those in Gibson. J. Narlock had transported cocaine from Florida and North Carolina to Michigan for at least three years; he either transported the cocaine himself or arranged for another person to transport it; he sold the cocaine to the Rohrers and 13 other people; and the quantities sold to the others were sufficiently large to support an inference they were redistributing the cocaine. J. Narlock also supplied cocaine to the Rohrer's on a front basis, i.e. supplying them with cocaine up front and collecting the proceeds later. Evidence of "fronting" cocaine supports the application of a leadership enhancement. United States v. Feinman, 930 F.2d 495, 500 (6th Cir. 1991). This record evidence constitutes more than enough evidence for this court to find he performed a leadership role.
 
 
 26
 The record also establishes the criminal activity involved five or more participants. Susan and Kenneth Rohrer, Richard Shapiro and Thomas J. Narlock are clearly involved in the conspiracy. Given the large amounts sold to many of the thirteen other persons reflected in the drug record, the district court did not clearly err in concluding five or more persons were participating in the conspiracy. Thus, the district court was not clearly erroneous in its application of the enhancement pursuant to U.S.S.G. Sec. 3B1.1(a).
 
 IV. Conclusion
 
 27
 For the reasons stated above, we AFFIRM the sentence as to the leadership enhancement pursuant to U.S.S.G. Sec. 3B1.1(a) and VACATE AND REMAND for resentencing in accordance with this opinion.
 
 
 
 [1]
 One entry, Sue, was identified as Mrs. Rohrer. Thus the records included approximately 708 grams purchased by Mrs. Rohrer over the six month period